556 F.2d 870
 Gwendy WILSON, Administratrix of the Estate of Gary Wilson,
Deceased, and Gwendy Wilson, Individually and as
widow of Gary Wilson, Deceased, Appellant,
v.
CROUSE-HINDS CO., Appellee.
 No. 76-1651.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 17, 1977.
Decided April 19, 1977.
On Petition for Rehearing En Banc June 29, 1977.
As Amended on Denial of Rehearing and Rehearing En Banc July 27, 1977.
 
 Frank P. Matthews, Omaha, Neb., for appellant; Raymond E. Pogge, Council Bluffs, Iowa, on brief.
 William J. Brennan, Jr., Omaha, Neb., for appellee; C. L. Robinson, Omaha, Neb., and John P. Churchman, Council Bluffs, Iowa, on brief.
 Before LAY and WEBSTER, Circuit Judges, and REGAN,* District Judge.
 LAY, Circuit Judge.
 
 
 1
 Gwendy Wilson, widow of Gary Wilson and administratrix of his estate, appeals from a jury verdict rendered in favor of Crouse-Hinds Co. She brought this diversity action for the wrongful death of her husband, who was electrocuted on March 10, 1973, while attempting to move a portable welder at his place of work. Plaintiff alleged that the welder's electrical plug, manufactured by the defendant Crouse-Hinds Co., was defectively designed in that it failed to prevent the ground wire from coming into contact with a phase wire when placed under torsional stress, thus causing the frame of the welder to become electrically charged.
 
 
 2
 The plaintiff pleaded alternative theories of strict liability, implied warranty and negligence. At plaintiff's request the case was submitted to the jury solely on the theory of strict liability and the jury returned a verdict for the defendant, Crouse-Hinds. On appeal plaintiff asserts that the district court committed prejudicial error, first, by admitting evidence relating to the contributory negligence of decedent and negligence of his employer, Griffin Pipe Co., and second, in improperly instructing the jury on strict liability. We find that the district court erred in instructing the jury and remand the case for a new trial.
 
 I.
 
 3
 At the time of decedent's electrocution, it was undisputed that the frame of the welder was electrically charged because the ground wire in the electrical plug came into contact with a phase wire. Plaintiff's engineering experts testified that the death of the decedent was caused because the gland nut on the plug was defective. The gland nut was an integral part of the plug; its alleged purpose was to prevent torsional twisting of wires. It is plaintiff's theory that the ground wire came loose from its terminal inside the plug because of torsional twisting.[1] These witnesses also testified that the plug was defective because (1) it was not designed to prevent contact between the ground wire and a phase wire in the event the ground wire came loose from its terminal and (2) that the plug was so designed that the compression screws, the screws which secured the ground and phase wires inside their terminals, could be cross-threaded giving a false impression that the screws were tight.
 
 
 4
 The defense offered evidence that the plug was not defective and that the ground wire came loose because Griffin Pipe, decedent's employer, did not properly assemble or maintain the plug. Experts for Crouse-Hinds testified that the plug was certified by Underwriters Laboratories and had withstood severe force tests. The tests revealed that more than 1938 pounds of force was needed to pull the ground wire loose from its terminal and that more than 120 torque pounds of force was needed to twist the ground wire out of its terminal. Defendant's experts testified that in their opinion the accident was caused because Griffin Pipe did not secure the ground wire in its terminal or failed to tighten the gland nut screws either when originally assembling the plug or after a maintenance check.[2]
 
 
 5
 On the first two days of trial the defendant brought out on cross-examination evidence of improper maintenance and use of the welder in that (1) neither the decedent nor his co-workers had checked to see if the welder was disconnected from the power source before attempting to move it; (2) the applicable standard of the American National Standards Institute (ANSI) requires the user to disconnect an electrical welder from the power source before moving the welder; (3) decedent's employer, Griffin Pipe, did not conduct safety meetings; and (4) evidence that the insulation on the welder's wires was worn exposing the copper conductor and that other worn spots were covered by tape. Defendant also urged at trial and reasserts here that:
 
 
 6
 (W)hoever was maintaining this equipment simply made no attempt to determine whether all component parts of the Crouse-Hinds plug were properly assembled or tight . . .. The insides of the Crouse-Hinds plug were not readily discernible and it would take a screwdriver to check what the plug looked like on the inside. We submit that whoever looked at the welder could see that the cord attached to our plug should be either replaced or repaired. It was clear that whoever was responsible for maintenance did not maintain the outside of the cord, and a fair inference is that he also failed to maintain the inside of the plug.
 
 II.
 
 7
 Plaintiff asserts that the trial court erroneously admitted the aforementioned evidence of faulty maintenance. Plaintiff contends that this conduct is evidence relating to decedent's contributory negligence and the negligence of Griffin Pipe, which in Iowa is not a defense in strict liability in tort. Hawkeye Security Ins. Co. v. Ford Motor Co., 199 N.W.2d 373, 380 (Iowa 1972); Restatement (Second) of Torts § 402A, comment n (1965).
 
 
 8
 We would seriously question the admission of this evidence under the theory of strict liability.[3] However, plaintiff's argument overlooks that the case was also tried under her negligence count and the defendant's pleaded defense of contributory negligence. Plaintiff asserts, however, that the negligence count was voluntarily dismissed and that these issues were withdrawn from the case. We cannot agree.
 
 
 9
 Sometime during the second day of trial plaintiff filed in the office of the clerk of the district court a voluntary dismissal of her negligence and implied warranty counts. The record does not disclose whether the pleading was filed before trial commenced on the second day, during trial or at the close of the day. At the commencement of the proceedings on the third day plaintiff rested her case. No oral record was made then of the dismissal and the transcript does not affirmatively indicate when the trial court was informed of the dismissal. The defendant indicates that its counsel was informed of the dismissal by mail received on the morning of the third day of trial.[4]
 
 
 10
 Although there exists some disagreement on whether a plaintiff must follow Fed.R.Civ.P. 15(a) or 41(a) when dismissing less than all of the claims involved in an action,[5] this court in Johnston v. Cartwright, 355 F.2d 32, 39 (8th Cir. 1966), recognized that the differences were more technical than substantial: "(I)t may not be material whether the court acts under Rule 15(a) which relates to amendments . . . or Rule 41(a)(2)." In this case the differences are not material as plaintiff failed to comply with either rule.
 
 
 11
 A unilateral dismissal or amendment cannot be accomplished under either rule after an answer has been filed. Under Rule 41(a) a stipulation signed by all the parties or an order of the court is required for a dismissal after an answer is filed. Similarly under Rule 15(a) a party may amend after an answer only by leave of court or by written consent of the adverse party. In the present case, plaintiff did not obtain a stipulation, written consent or an order of dismissal from the court. Thus, the record fails to disclose any proper dismissal of the negligence and implied warranty counts.
 
 
 12
 We do surmise that the trial court was made aware of the plaintiff's dismissal sometime before instructing the jury. At least it may be said the trial court and the parties understood the case was to be submitted only upon the strict liability theory.
 
 
 13
 We thus find no prejudicial error in the admission of the evidence.
 
 III.
 
 14
 Plaintiff urges that the trial court erroneously instructed the jury on strict liability. The central controversy is the propriety of the court's instruction on improper maintenance. Plaintiff asserts that the court's instruction No. 11 required her to prove that decedent and his employer did not negligently maintain the plug.[6]
 
 
 15
 The court instructed the jury that, "A manufacturer is also entitled to expect that reasonable measures will be taken to maintain its product in a proper condition, and the manufacturer is not liable for damages which result from improper maintenance of the product . . .." (Emphasis added). This instruction erroneously injected into the case a standard of due care to be exercised by the decedent and his employer. Under Iowa law failure of the parties to exercise due care is relevant to negligence, but is not germane to strict liability. Only when plaintiff's use (or misuse) of a product is not reasonably foreseeable or constitutes assumption of the risk, can plaintiff's recovery be barred in a strict liability case under Iowa law. Hawkeye Security Ins. Co. v. Ford Motor Co., supra, 199 N.W.2d at 380-81. Strict liability focuses on whether the product is unreasonably dangerous, and not on the exercise of reasonable care by the parties. Cf. Robbins v. Farmers Union Grain Terminal Ass'n, 552 F.2d 788 (8th Cir. 1977); Ault v. International Harvester Co., 13 Cal.3d 1113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1974). This principle is not only true as it relates to the plaintiff's or defendant's conduct, but it necessarily applies as well to the conduct of others, such as plaintiff's coemployees. See, e.g., Eshbach v. W. T. Grant's & Co., 481 F.2d 940, 944-45 (3rd Cir. 1973) (father's negligence not a defense); and McGoldrick v. Porter Power Tools, 34 Cal.App.3d 885, 110 Cal.Rptr. 481 (1973) (employer's negligence not a defense).
 
 
 16
 In the present case defendant concedes that it did not assert misuse as a defense against plaintiff's strict liability count. In light of this admission, it is readily evident that the court's instruction erroneously informed the jury that plaintiff could not recover in strict liability if the decedent or his employer failed to exercise reasonable care to maintain the machine. Defendant urges that the court's instruction regarding reasonable maintenance relates to proximate cause and is not necessarily related to the decedent's or any other employee's lack of due care. However, defendant's characterization of the instruction in terms of proximate cause is merely another word formulation of the impermissible defense of contributory negligence. If plaintiff is not barred from recovery by negligent acts she cannot be barred by relabeling the same conduct as a contributing cause of the accident. See Horn v. General Motors Corp., 17 Cal.3d 359, 131 Cal.Rptr. 78, 551 P.2d 398 (1976) (en banc). The prejudicial error in giving instruction No. 11 becomes exaggerated by the absence of an instruction which would have informed the jury that the plaintiff's recovery was not barred by decedent's or any other employee's failure to use reasonable measures to inspect the product or guard against a possible defect.[7]
 
 
 17
 We recognize, as the court instructed in No. 11, that the plaintiff must prove that at the time of the product's use it must be assembled and installed in the manner intended by the manufacturer. Cf. Hales v. Green Colonial, Inc., 490 F.2d 1015 (8th Cir. 1974). However, once plaintiff has demonstrated this, assuming proof of a defect, the defendant remains liable for injuries arising from any foreseeable use or misuse of the product.[8]
 
 
 18
 We conclude that the instructions on strict liability were misleading when considered with the overall evidence regarding the alleged improper maintenance including the failure of the decedent to disconnect the welder from the electrical power source.
 
 IV.
 
 19
 We are always hesitant to require a retrial. The administration of justice is never served when this is required. On the other hand, we are convinced after a thorough study of the record that plaintiff did not have the theory of her case properly submitted to the jury.
 
 
 20
 The judgment is reversed and the cause remanded for a new trial.
 
 ON PETITION FOR REHEARING EN BANC
 
 21
 Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON, WEBSTER and HENLEY, Circuit Judges, en banc.
 
 
 22
 LAY, Circuit Judge.
 
 
 23
 Since a majority of the active judges have voted for a rehearing en banc, the court now vacates Part III of the panel opinion and upon reconsideration finds that the judgment for defendant should be affirmed.
 
 
 24
 After a careful review of the entire record, the court finds that plaintiff failed to preserve as error that portion of instruction No. 11 concerning "improper maintenance." Although plaintiff's counsel objected to several portions of instruction No. 11, counsel did not specifically object to the "improper maintenance" language. After the trial court adopted several of counsel's suggestions, plaintiff's counsel stated that the instructions would "satisfy us."
 
 
 25
 Under the circumstances we find that plaintiff has failed to comply with Fed.R.Civ.P. 51, which requires specific objections to jury instructions. Rule 51 requires an objection to be "sufficiently specific to bring into focus the precise nature of the alleged error." Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943). The purpose of the rule is to make certain that the trial court is adequately informed. In the present case, although there exists some ambiguity in the record as to plaintiff's intent, it is clear that plaintiff did not at any time make a precise objection to the language of instruction No. 11 concerning "improper maintenance." Further, when the instructions are considered as a whole, and in light of the suggestions made by counsel and adopted by the trial court, we do not feel that the court erred in failing to give requested Instruction No. 6.
 
 
 26
 Part III of the panel opinion which granted plaintiff a new trial is vacated and the judgment for defendant is affirmed.
 
 
 
 *
 John K. Regan, United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 An expert witness for the plaintiff made a clear lucite facsimile of the plug body so that he could observe the ground wire being pulled from its terminal by torsional twisting
 
 
 [2]
 As additional support of this theory the defendant introduced photographs of the plug taken shortly after the accident by O.S.H.A. The photographs revealed that the end of the ground wire was mushroom-shaped. An expert for the defendant testified that a ground wire pulled or twisted out of its terminal by force would be elongated and that such force would not produce a mushroom shape
 
 
 [3]
 See Horn v. General Motors Co., 17 Cal.3d 359, 131 Cal.Rptr. 78, 551 P.2d 398 (1976) (en banc) (plaintiff's failure to use seat belts); Eshbach v. W. T. Grant's & Co., 481 F.2d 940 (3d Cir. 1973) (father's failure to supervise use of riding lawnmower by children). Cf. Melia v. Ford Motor Co., 534 F.2d 795, 800-02 (8th Cir. 1976) (failure to stop for red traffic light)
 
 
 [4]
 On the third day of trial the defendant proceeded with its evidence. The defendant's witnesses testified about the ANSI standards and a photograph which showed that after the accident decedent's employer, Griffin Pipe, had placed a sign on the welder warning, "Pull switch and unplug after using and before moving." Plaintiff did not object to the evidence concerning the ANSI standard, but did object to the testimony about the sign and the exposed copper wires. The objections were overruled
 
 
 [5]
 See 5 J. Moore, Federal Practice P 41.06-1 (2d ed. 1964); 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1479 (1971)
 
 
 [6]
 Defendant contends that plaintiff did not specifically object to the language concerning improper maintenance. See Fed.R.Civ.P. 51. However, we feel the substance of plaintiff's initial exception to the whole instruction sufficiently called attention to the problem and was sufficient to preserve the question for review. Plaintiff initially objected stating that the instruction requires "the Plaintiff to prove freedom from contributory negligence or freedom from negligence on the part of Griffin Pipe, which is not an issue in this case because we are under strict liability." Although the court thereafter made several specific changes at plaintiff's request, plaintiff's counsel respectfully told the court that his "suggestions won't cure it completely."
 
 
 [7]
 Plaintiff requested such an instruction, but failed to object to the court's refusal to give it. Under these circumstances she cannot complain of this omission. Fed.R.Civ.P. 51
 
 
 [8]
 We note that the trial court refused to give plaintiff's requested instruction No. 6 relating to foreseeable use, because it was not entirely accurate. Plaintiff registered a proper exception. We recognize that it is the general rule that a trial court may refuse to give any instruction which is not entirely correct, however this court has also consistently held that the trial court has a duty to properly frame the instruction when the instruction would be beneficial to the jury's proper determination of the case. Emery v. Northern Pac. R.R., 407 F.2d 109, 112 n.3 (8th Cir. 1969); Chicago & N.W. Ry. v. Rieger, 326 F.2d 329, 334 (8th Cir.), cert. denied, 377 U.S. 917, 84 S.Ct. 1182, 12 L.Ed.2d 186 (1964); Chicago & N.W. Ry. v. Green, 164 F.2d 55 (8th Cir. 1947). See also Chavez v. Sears, Roebuck & Co., 525 F.2d 827, 830 (10th Cir. 1975); and Honeycutt v. Aetna Ins. Co., 510 F.2d 340, 349 n.11 (7th Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2416, 33 L.Ed.2d 679 (1975); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2552 (1971). Under strict liability and the circumstances of this case, an instruction on foreseeable use would seem essential