Donald E. PORTER, Conservator of Jane Ann Porter, and Donald E. Porter, Individually, Plaintiffs,

v.

UNITED STEEL & WIRE COMPANY, Defendant.

No. C 75–11.

United States District Court,
N. D. Iowa,
Cedar Rapids Division.

Sept. 19, 1977.

---

Lloyd E. Humphreys, Cedar Rapids, Iowa, E. Michael Carr, Manchester, Iowa, Craig D. Warner, Burlington, Iowa, for plaintiffs.

Wayne C. Collins, Richard C. Garberson, Cedar Rapids, Iowa, for defendant.

### ORDER

McMANUS, Chief Judge.

This matter is before the court on defendant's motions for judgment n. o. v., for new trial, and to alter judgment, all filed June 27, 1977.

Plaintiff, Donald Porter, brought this action on behalf of his minor child Jane Ann to recover damages for injuries sustained by Jane Ann as a result of a fall from a grocery shopping cart and the accompanying impact of the overturned cart upon her. The defendant, United Steel & Wire Company, is the manufacturer and seller of the shopping cart.

Plaintiff submitted his case to the jury on the basis of strict liability and negligence alleging faulty design and manufacture, and failure to adequately inspect and warn of potentially dangerous conditions in the cart. Defendant denied liability generally and sought to introduce a number of defenses, only one of which was submitted to the jury in the court's instructions—that the sole proximate cause of Jane Ann's injuries was the negligence of her parents in failing to instruct her in the use of shopping carts and in failing to supervise her. On June 14, 1977, the jury returned a verdict in favor of the plaintiff in the amount of $45,000. Defendant's motions timely followed.[1]

*Motion for Judgment N.O.V.*

Defendant moved for a directed verdict at the close of plaintiff's evidence

---

1. Although defendant's motions seemingly exceed the ten-day period set out in Rules 50 and 59 FRCP, they are timely by operation of Rule 6(a) FRCP.

maintaining that there was insufficient evidence of a defective condition of the shopping cart and of defendant's alleged negligence to support a verdict in favor of plaintiff. This is the substance of the motion now.[2]

Considering the evidence in the light most favorable to plaintiff as the prevailing party, *King v. State Farm Life Ins. Co.,* 448 F.2d 597, 599 (8th Cir. 1971); *Breeding v. Massey,* 378 F.2d 171, 176 (8th Cir. 1967), the court finds that the case was amply sufficient to submit to the jury. This is not a case in which reasonable jurors could not have returned the verdict that they did. *See Pritchett v. Rosoff,* 546 F.2d 463, 466 (2d Cir. 1976); *Quichocho v. Kelvinator Corp., supra.* Accordingly, the court will not overturn the verdict.

### *Motions to Alter Judgment and for New Trial*

■ These motions are directed to the discretion of the court. *E.g., Spurlin v. General Motors Corp.,* 528 F.2d 612, 620 (5th Cir. 1976); *Sulmeyer v. Coca-Cola Co.,* 515 F.2d 835, 851–52 (5th Cir. 1975) *cert. denied* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976); *Sanden v. Mayo Clinic,* 495 F.2d 221, 226 (8th Cir. 1974). *See also Walker v. Bank of America Nat. Trust and Sav. Ass'n,* 268 F.2d 16, 25 (9th Cir. 1959) *cert. denied* 361 U.S. 903, 80 S.Ct. 211, 4 L.Ed.2d 158 (1959). It is within this framework that the court will consider defendant's contentions of legal error.

■ Defendant asserts that the uncontroverted evidence establishes that the conduct of the injured party or her parents was the proximate cause of the injuries sustained. If the argument here is that the actions of the child or her parents amounted to negligence then it must be rejected. First, it is clear in Iowa that any negligence of the parents in failing to instruct or supervise Jane Ann cannot be imputed to her or her cause of action which her father is asserting. *Zach v. Morningstar,* 258 Iowa 1365, 142 N.W.2d 440, 443 (1966); *Murphy v. City of Waterloo,* 255 Iowa 292, 123 N.W.2d 49, 56 (1963); *Figge Auto Co. v. Taylor,* 325 F.2d 899, 902 (8th Cir. 1964). Second, since Jane Ann was five years old at the time of the accident, it seems that under Iowa law she could not be negligent in this instance. *Paschka v. Carsten,* 231 Iowa 1185, 3 N.W.2d 542, 546 (1942); *cf. Wheatley v. Heideman,* 251 Iowa 695, 102 N.W.2d 343, 353 (1960). Finally, the case was submitted to the jury on a strict liability in tort theory as well as a negligence theory; any defense of contributory negligence was inapplicable, and therefore ineffective against, plaintiff's strict liability contentions. *Hawkeye Security Ins. Co. v. Ford Motor Co.,* 199 N.W.2d 373, 380 (Iowa 1972).

■ If the argument here is that the conduct of Jane Ann or her parents was the *sole* proximate cause[3] of her injuries it too is rejected. The jury was instructed on the applicable law in this regard, and the verdict against the defendant is an implicit rejection of defendant's contention here. The court refuses to second-guess the jury by holding as a matter of law that conduct other than defendant's was the sole proximate cause of Jane Ann's injuries.

---

2. The court is governed by the same considerations in passing upon a motion for judgment n. o. v. as it is in passing upon a motion for a directed verdict. *See e. g., Davis v. Burlington Northern, Inc.,* 541 F.2d 182, 186 (8th Cir. 1976); *Quichocho v. Kelvinator Corp.,* 546 F.2d 812, 813 (9th Cir. 1976); *Lester v. Dunn,* 154 U.S.App.D.C. 399, 401, 475 F.2d 983, 985 (1973).

3. Defendant must allege that the action of others was the sole proximate cause of the injuries to Jane Ann because concurrent causes would not absolve defendant from liability, providing that defendant's conduct was a substantial factor in bringing about the harm. *See Gunnison v. Torrey,* 216 N.W.2d 361, 364 (Iowa 1974); *Winter v. Honeggers' & Co., Inc.,* 215 N.W.2d 316, 320 (Iowa 1974).

Defendant also maintains that a $4,000 settlement between plaintiff and Bud's Super Value (Bud's) achieved prior to the commencement of this suit operated to discharge defendant completely from any liability for the injuries here, and that the court was in error for declining to, at least, submit the matter to the jury. The settlement between plaintiff and Bud's, the store in which the incident took place, is embodied in a release dated July 24, 1974.[4] The release, Official Form No. 24 of the Iowa State Bar Ass'n., is stated in relatively straight-forward language and is explicitly a compromise settlement of a disputed claim. It is directed exclusively to Eric G. Waugh, d/b/a Bud's Super Value and no other party. Every reference to the party to be released is particularized by a typed interposition naming Bud's as that party. Defendant draws attention to the language purportedly releasing all claims and submits that that language creates, at least, a jury question.

The Iowa law regarding releases is clear:

[A] release of an obligor does not automatically release all others who are or may be liable. . . . If the debt is unliquidated the intention of the parties to the release controls. This intent must be determined by the terms of the contract aided by such extrinsic evidence as may be properly offered to aid in the task of interpretation.

*Community S. D. of Postville v. Gordon N. Peterson, Inc.*, 176 N.W.2d 169, 175 (Iowa 1970).

Since the debt at the time of release was unliquidated the intention of plaintiff and Bud's is the touchstone. The language of the release by its own terms is directed solely to Bud's. The phraseology defendant points to as supposedly releasing all claims, stated in its full context, reads:

I as conservator for Jane Ann Porter do hereby release, acquit and forever discharge Eric G. Waugh, d/b/a Bud's Super Value from any and all liability whatsoever, including all claims, demands and causes of action of every nature affecting Jane Ann Porter which she may have or ever claim to have against Eric G. Waugh, d/b/a Bud's Super Value. . . .

How this language can be construed as indicating that the payment of $4,000 constitutes full compensation for all claims plaintiff could assert is beyond the ken of this court.[4A] Defendant asserts no relationship between Bud's and itself whereby a release would operate in its favor. *See Estate of Bruce v. B.C.D., Inc.*, 396 F.Supp. 157 (S.D.Iowa 1975). Furthermore, as an aid to interpreting the release, the court received testimony from E. Michael Carr, the attorney representing the plaintiff on the release, on the intent of the parties. Mr. Carr stated unequivocally that the intent of the parties was to release Bud's and no other party and, additionally, that the release was not intended to represent a total resolution of plaintiff's legal claims. In this setting the court refused to submit the issue to the jury. This refusal is in keeping with *McKenna v. Austin*, 77 U.S. App.D.C. 134, 137, 134 F.2d 659, 664 (1943):

Whether the settlement is made and accepted as full satisfaction or merely as the best obtainable compromise for the settler's liability is the crucial issue, and ordinarily one of fact. If, however, the agreement's terms leave no room for doubt, the decision should be made as a matter of law.

*Accord Clarke v. Volkswagen of America, Inc.*, 419 F.Supp. 74, 78 (S.D.Iowa 1976).

Although not articulated as such, the court's refusal to submit the $4,000 settlement to the jury was the equivalent of determining that, as a matter of law, the release of liability was an agreement between plaintiff and Bud's only, and could

---

4. See Appendix.

4A. *See also* subparagraph 1 of the release which is more directly supportive of defendant's claim, but when read in the context of the parties' intent discussed below, is equally unavailing.

not operate to the benefit of defendant. That decision is adhered to.[5]

Defendant's claim that the jury verdict should be reduced by $4,000, the amount of the release, as an already-paid partial compensation for the injuries is also rejected for the above-mentioned reasons. At any rate, defendant was able by final argument, and other testimony, to apprise the jury of the $4,000 payment from Bud's. The jury's verdict may indeed already represent the result defendant seeks in this claim.

 Defendant maintains that the court erred in not instructing the jury regarding Jane Ann's alleged misuse of the shopping cart. The testimony elicited at trial, particularly from Jane Ann herself, established that the accident occurred when Jane Ann grasped the side of the shopping cart and attempted to climb in whereupon the cart fell over onto her. Defendant contends that this use of the cart is misuse since the cart was allegedly neither intended nor designed for this treatment.

The bounds of the misuse defense have never been clearly defined in Iowa since its recognition in passing in *Hawkeye Security Ins Co. v. Ford Motor Co.*, supra at 381. Thus, the court is thrust into the breach here. However, the court remains persuaded that the conduct of Jane Ann did not amount to misuse here within the meaning of strict products liability doctrine.[6]

This court is of the opinion that defendant must establish more than that the plaintiff used a product in other than the use for which the product was intended or designed to make out a valid misuse defense. An examination of the authorities in *Hawkeye*, the developing trends in products liability, and the better rule of law all support the idea that a submissible misuse defense requires that a defendant show the use of the product by plaintiff in a manner which defendant could not reasonably foresee. Thus *Prosser* states:

> [T]he seller is not liable when the product is . . . used in some unusual and unforeseeable way. . . .
>
> At the same time, there are some relatively unusual uses of a product . . . which the seller may reasonably be expected to foresee and guard against; and he may have reason to know of an otherwise unforeseeable use made by those whom the product will reach, and so be required to take precautions. Likewise, even in the case of normal uses, there may be a recognizable danger that the product will get into the hands of children or other wrong people, which will call for steps to guard against it. In such cases the seller is not relieved.

Prosser, The Law of Torts, ¶ 102, at 668–70 (4th ed. 1971) (footnotes omitted).[7] The Eighth Circuit, in a case interpreting Iowa law, has held that a defendant in a strict products liability action "remains liable for injuries arising from any *foreseeable use or misuse* of the product". *Wilson v. Crouse-Hinds Co.*, 556 F.2d 870, 874 (8th Cir. 1977) (footnote omitted) (emphasis · in original). The Third Circuit, interpreting Pennsylvania law, concurs in this analysis. *See Suchomajcz v. Hummel Chemical Co.*, 524 F.2d 19, 28 (1975).

---

5. Defendant's reference to *Moose v. Rich*, 253 N.W.2d 565, 568–69 (Iowa 1977) as support for the proposition that a release may be asserted as a satisfaction of all claims is certainly true in the abstract. However, where a release is not intended to satisfy all claims it cannot stand as a defense; and so the court recognized by its citation of *Community S. D. of Postville v. Gordon N. Peterson, Inc.*, supra, in *Moose v. Rich*.

6. This conclusion is reached even though the court assumes *arguendo*, though not without some hesitation, that a person of Jane Ann's age might misuse a product within the meaning of the products liability defense. *But cf. Paschka v. Carsten*, supra.

7. *See also* Annot., 46 A.L.R.3d 240, 247 (1972), stating: "While the term 'misuse' in its ordinary sense, and as used in some cases, refers to a use in other than the intended manner, in strict products liability in tort cases the term may be taken to refer to use in other than a reasonably foreseeable manner." (footnote omitted).

The question, so narrowed then, is whether Jane Ann's conduct, though arguably amounting to use of the cart in a manner for which it was not designed or intended, was nonetheless a reasonably foreseeable use, and thus outside the misuse defense. Any trip to a shopping market will confirm that the actions of children amounting to standing upon, hanging from, even jumping upon, shopping carts are reasonably foreseeable. The conduct of Jane Ann here does not constitute misuse within the meaning of strict products liability.

 Defendant also maintains that an instruction read to the jury, Instruction No. 16 is an erroneous statement of the law because it imposes absolute liability on the defendant. The instruction reads as follows:

> If you find that the essential elements of the plaintiffs' claims based on the theory of strict liability have been established by a preponderance of the evidence, the defendant United is liable on this theory even though you may find and believe that it exercised all possible care in the preparation and sale of the product.

Defendant did not object to this instruction when given the opportunity to do so under Rule 51 FRCP. Defendant may be precluded from doing so now. *See Stephenson v. College Misericordia*, 376 F.Supp. 1324, 1326 (M.D.Pa.1974); *Brinegar v. San Ore Const. Co.*, 302 F.Supp. 630, 641 (E.D. Ark.1969). In any event, the instruction correctly states the rule regarding strict products liability. *See Kleve v. General Motors Corporation*, 210 N.W.2d 568, 571 (Iowa 1973); Restatement (Second) of Torts § 402A(2)(a) (1965).

 Finally, the court is not shocked at either the imposition of the verdict upon the defendant or the magnitude of the verdict and, accordingly, declines defendant's suggestion to order a remittitur or new trial.

It is therefore

ORDERED

Defendant's motions denied.

## APPENDIX

### RELEASE

The undersigned __Donald E. Porter__ being of legal age, hereby acknowledge payment to the conservatorship of Jane Ann Porter of the sum of Four thousand and no/100 ——— Dollars ($4,000.00) in consideration of which payment I as conservator for Jane Ann Porter do hereby release, acquit and forever discharge Eric G. Waugh, d/b/a Bud's Super Valu from any and all liability whatsoever, including all claims, demands and causes of action of every nature affecting Jane Ann Porter which she may have or ever claim to have against Eric G. Waugh, d/b/a Bud's Super Valu by reason of:

(a) An accident or event which occurred on or about the 10th day of November, 1973 at Bud's Super Valu in Manchester, Iowa; or

(b)

As a further consideration of said payment I as conservator for Jane Ann Porter hereby agree:

1. That this release covers all injuries and damages, whether known or not and which may hereafter appear or develop arising from the matters above referred to.

2. That the above sum is all that Jane Ann Porter will receive for her claim against Eric G. Waugh, d/b/a Bud's Super Valu and no promise for any other or further consideration has been made by anyone.

3. That this release is executed as a compromise settlement of a disputed claim, liability for which is expressly denied by the party released, and the payment of the above sum does not constitute an admission of liability on the part of any person or entity.

4. That I as conservator for Jane Ann Porter am executing this release solely in

reliance upon my own knowledge, belief and judgment and not upon any representations made by the party released or others in his behalf.

5. This release exclusively releases Eric G. Waugh, d/b/a Bud's Super Valu and no other party.