Vincent E. HUGHES and Eileen M. Hughes, Appellants,

v.

MAGIC CHEF, INC., Appellee.

No. 63279.

Supreme Court of Iowa.

Feb. 20, 1980.

Raymond J. Gazzo of Coppola, Trout, Taha & Gazzo, Des Moines, for appellants.

Ronald A. Riley and David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellees.

Considered by LeGRAND, P. J., and UH-LENHOPP, McCORMICK, ALLBEE and McGIVERIN, JJ.

UHLENHOPP, Justice.

This appeal in a products liability action requires us to consider the trial court's jury instructions.

Plaintiff Vincent E. Hughes was severely burned on March 9, 1976, when a stove manufactured by defendant Magic Chef, Inc., exploded in his mobile home. The propane gas tank which fueled the stove had run dry on March 7, 1976. After the propane tank was refilled that evening, two pilot lights on the top of the stove were re-lit but a third pilot light in the oven broiler cavity was not re-ignited. Experts testified that a resultant buildup of propane gas in the stove produced an explosion and fire when Hughes attempted to use the stove on the evening of March 9th. Although Magic Chef's expert testified that the cause of the fire was instead a flammable liquid on top of the stove, this discrepancy is not relevant to our resolution of the appeal.

Hughes and his wife Eileen brought this strict liability action against Magic Chef, alleging the stove was unreasonably dangerous in several respects. Magic Chef raised affirmative defenses of assumption of risk and misuse of product. The jury found for Magic Chef and the trial court overruled the Hugheses' motion for new trial. Hugheses then appealed. We will speak of Vincent E. Hughes alone, as the Hugheses together succeed or fail in their appeal.

I. *Instruction on elements of strict liability.* Hughes objects to Instruction 9 on the ground it required him to prove that the defects in the stove were "not discoverable by ordinary inspection." The instruction enumerated the propositions Hughes had to prove and stated in relevant part (emphasis added):

It is the law that a manufacturer of products, in the business of placing them in the stream of commerce to be sold ultimately to the general public for consumption or use, is strictly liable for any defects in such product which makes it unreasonably dangerous to the ultimate user if such product is expected to and does reach such user without substantial change in the condition it was in when sold and if such user uses the product in the intended manner *and reasonably* without inspecting it and without knowledge of the defect.

. . .

A defect under this law is one not known to the user of the product and *is not discoverable by ordinary inspection.*

. . .

. . .

As to this case, in order for the Plaintiff to recover, he must prove each and all of the following propositions:

a. That there was a defect in the stove when it left the Defendant's control and when it reached the Plaintiff for use making it unreasonably dangerous for its intended use. . . .

. . .

b. That the Plaintiff was not aware of such defect(s) and *such was not discoverable by ordinary inspection.*

c. That the Defendant, as a manufacturer, had reason to believe that users would use the stove as sold *without more than ordinary inspection.*

d. Such defect(s) was a proximate cause of the explosion and resulting injury to the Plaintiff. . . .

■ We agree with Hughes that this instruction was erroneous in requiring him to establish that the defects were not discoverable by ordinary inspection. Restatement Second of Torts § 402A, Comment n (1965). We cited Comment n with approval in *Hawkeye Security Insurance Co. v. Ford Motor Co.*, 199 N.W.2d 373, 380 (Iowa 1972). The rationale of that comment has been followed in a number of other jurisdictions. *See* Annot., 46 A.L.R.3d 240, 252 (1972). The Comment states:

> *Contributory negligence.* Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases . . . applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

The present instruction does not deal with encountering a "known danger" or using a product when "aware of the danger." Rather, the instruction would relieve the producer of liability if the plaintiff negligently failed to discover the defect in the product. So instructing the jury constituted error.

We are not persuaded by Magic Chef's arguments to the contrary. Magic Chef initially contends that Hughes failed to preserve error. This contention cannot be sustained; Hughes specifically and timely argued to the trial court that "there is no obligation imposed on the claimant in a products liability matter to 'reasonably inspect the product.'" Neither can we accept Magic Chef's contention that failure reasonably to inspect the product was mentioned merely as "a factor" in listing the elements of products liability or as a mere "elaboration" upon the meaning of the elements. The language of the instruction quite clearly precludes recovery upon a finding that the defect was discoverable by ordinary inspection. Nor do we find merit in Magic Chef's contention that the result here is controlled by *Eickelberg v. Deere & Co.*, 276 N.W.2d 442, 447 (Iowa 1979). There we approved such repetition of the elements of strict liability as is necessary "for a clear presentation of the issues"; we did not approve an instruction containing an erroneous statement of the law.

Since the case must be retried we will address Hughes' other claimed errors which may arise on retrial.

II. *Instruction on misuse.* Hughes claims that the trial court's instruction on misuse was erroneous in two respects. First, he argues that the misuse of product and assumption of risk defenses should not both be submitted in strict liability actions, by virtue of *Rosenau v. City of Estherville*, 199 N.W.2d 125, 133 (Iowa 1972). Second, he argues that the trial court's misuse instruction erroneously holds him to a "reasonableness" standard in the use of the product.

A. As to Hughes' first argument, this court held in *Rosenau* that in an ordinary negligence case in which the defendant raises the issue of the plaintiff's own negligence, assumption of risk is not to be pled and submitted as a separate defense. *Rosenau*, 199 N.W.2d at 133. Instead, the essential elements of assumed risk, if supported by substantial evidence, are to be included in the contributory negligence instruction. Separate instructions on those defenses might result in the jury's rendering inconsistent verdicts and in the trial court's overemphasizing a particular aspect of a case. *Id.* at 132–33.

Hughes' argument that the *Rosenau* reasoning applies equally to the products liability defenses of misuse of product and assumption of risk does not recognize the differing natures of those two issues. Misuse precludes recovery when the plaintiff uses the product "in a manner which defendant could not reasonably foresee." *Porter v. United States Steel & Wire Co.*, 436 F.Supp. 1376, 1381 (N.D.Iowa 1977) (applying Iowa law). *See Wilson v. Crouse-Hinds Co.*, 556 F.2d 870, 874 (8th Cir. 1977) (Iowa law); W. Prosser, Law of Torts § 102, at 669 (1971); Annot., 46 A.L.R.3d 240, 247 (1972). Assumption of risk is a defense to a strict liability action when the plaintiff has "voluntarily and unreasonably proceed[ed] to encounter a known danger. . . ." Restatement Second of Torts § 402A, Comment n (1965). *See* W. Prosser, Law of Torts § 79, at 523 (1971); Annot., 46 A.L.R.3d 240, 253–54 (1972). The misuse of product doctrine has to do with the producer's responsibility in the first place; he has no liability at the outset if the product is misused. The assumption of risk doctrine has to do with the user's culpability; he bars himself from recovering if he voluntarily proceeds in the face of known danger. Although we recognize that in certain cases a plaintiff might have *both* used the product in a manner which the defendant could not reasonably foresee *and* voluntarily and unreasonably proceeded to encounter a known risk, we reject the idea that a plaintiff cannot do one without doing the other. *See Reese v. Chicago, Burlington & Quincy Railroad Co.*, 5 Ill.App.3d 450, 454, 283 N.E.2d 517, 519–20 (1972) ("[A]ppellant is incorrect in arguing that misuse is a facet of the affirmative defense of assumption of risk."); *Heil Co. v. Grant*, 534 S.W.2d 916, 922 (Tex.Civ.App.1976) (absence of a showing of misuse does not preclude a finding of assumption of risk).

Despite our rejection of Hughes' attempt to apply *Rosenau* by analogy to this case, we agree with his basic contention that the trial court should not have given an instruction on misuse *as a defense* in this strict liability action. Misuse is not an affirmative defense but rather has to do with *an element of the plaintiff's own case.*

This conclusion departs somewhat from language in some of our prior products cases. Under that language the misuse issue may arise twice: first in connection with the plaintiff's prima facie case and again in connection with the defendant's affirmative defense. But under section 402A of the Restatement Second of Torts, which we have approved, the plaintiff must prove as part of his case that the product was in a "defective condition" which was "unreasonably dangerous to the user or consumer." In *Kleve v. General Motors Corporation* we refined this requirement by stating that the product must be unreasonably dangerous "in the normal and innocent use or consumption thereof." 210 N.W.2d 568, 571 (Iowa 1973). "Normal use" of a product in the strict liability context is synonymous with "foreseeable use." *LeBouef v. Goodyear Tire & Rubber Co.*, 451 F.Supp. 253, 257 (D.La.1978). Thus as part of his prima facie case, the plaintiff must establish that the product was unreasonably dangerous in a reasonably foreseeable use. *See Hawkeye*, 199 N.W.2d at 381 (upholding verdict based on instruction requiring plaintiff to make such showing). *See also, d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 890 (9th Cir. 1977) (Arizona law); *Balido v. Improved Machinery, Inc.*, 29 Cal.App.3d 633, 640, 105 Cal.Rptr. 890, 895 (1973); *Gallee v. Sears, Roebuck & Co.*, 58 Ill.App.3d 501, 503, 16 Ill.Dec. 56, 59, 374 N.E.2d 831, 834 (1978); *Lahocki v. Contee Sand & Grav-*

*el Co.*, 41 Md.App. 579, 582, 398 A.2d 490, 494 (1979); *Fabbrini Family Foods, Inc. v. United Canning Corp.*, 90 Mich.App. 80, 92, 280 N.W.2d 877, 883 (1979); *Braun v. General Motors Corp.*, 579 S.W.2d 766, 769 (Mo. App.1979); *Micallef v. Miehle Co., Division of Miehle-Goss Dexter, Inc.*, 39 N.Y.2d 376, 385–86, 384 N.Y.S.2d 115, 121, 348 N.E.2d 571, 577 (1976); Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 50 Minn.L.Rev. 791, 821 (1966).

We have also said, however, that a defendant may defend a section 402A action by pleading and proving that the injured person misused the product, that is, he used it in a manner not reasonably foreseeable. *See Hawkeye*, 174 N.W.2d at 683. *See also, Wilson*, 556 F.2d at 874; *Porter*, 437 F.Supp. at 1381; W. Prosser, The Law of Torts § 102, at 669 (1971); Annot., 46 A.L. R.3d 240, 247 (1972). The result of this prior language is that precisely the same issue—whether the product was used in a reasonably foreseeable manner—may be decisive both as to whether the plaintiff made a prima facie case and as to whether the defendant established an affirmative defense.

If we continued to treat misuse as an affirmative defense distinct and additional to the plaintiff's burden of proving that the product was used in a reasonably foreseeable manner, we would create the potential for inconsistent jury findings in the same case. In addition we would create the possibility of a shifting burden of proof on the issue. *See* Annot., 13 A.L.R.3d 1057, 1102 n. 11 (1967). The burden of proof regarding the use made of the product should not shift depending on the subtle distinction of whether the defendant offers evidence of misuse to rebut the plaintiff's evidence or instead offers it "to support an affirmative defense he is attempting to raise." *See id.*

The committee of The Iowa State Bar Association which compiled the uniform Iowa jury instructions, and whose comments were not available when this court decided some of the earlier strict liability cases, had the following to say regarding this specific question:

It is submitted that simply because a defendant pleads and offers proof negating an issue that the plaintiff must prove, it should not be treated as an affirmative defense. Instructions to juries become unnecessarily complicated and illogical when the burden of proof is placed upon the plaintiff to prove the affirmative of an issue and on the defendant to prove the negative of the same issue.

IA Uniform Jury Instructions, ch. 24 Preface (1975).

 We approve the committee's comment. Misuse of product is no longer to be considered an affirmative defense in products liability actions but is rather to be treated in connection with the plaintiff's burden of proving an unreasonably dangerous condition and legal cause. Regardless of whether a defendant does or does not plead misuse of the product the burden is on the plaintiff to prove that the legal cause of the injury was a product defect which rendered the product unreasonably dangerous in a reasonably foreseeable use. Any prior language in our decisions which may be considered contrary may no longer be taken as the law. Authorities which support our view include *Illinois State Trust Co. v. Walker Manufacturing Co.*, 73 Ill.App.3d 585, 589, 29 Ill.Dec. 513, 392 N.E.2d 70, 73 (1979) ("We note initially that misuse is not, as trial counsel and the court erroneously assumed, an *affirmative* defense.") (citation omitted); *Rogers v. Toro Manufacturing Co.*, 522 S.W.2d 632, 637 (Mo.App.1975) ("Although some writers refer to 'abnormal use' (a use not reasonably anticipated) as a defense to the action, it is not properly a defense but a necessary element of plaintiff's cause of action."); J. Dooley, Modern Tort Law § 32.79 (1977) ("Some courts erroneously state that 'misuse' and 'foreseeable use' is a defense."); L. Frumer & M. Friedman, Products Liability § 15.01 (1960); Kiselis, *Defenses To Products Liability In Illinois Arising Out of Plaintiff's Conduct*, 10 Loy.U.L.J. 229, 230 (1979); Epstein, *Products Liability Defenses Based on Plaintiff's Conduct*, 1968 Utah L.Rev. 267, 284; Lascher, *Strict Liability in*

*Tort for Defective Products: The Road to and Past Vandermark*, 38 S.Cal.L.Rev. 30, 51–52 (1965); Noel, *Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk*, 25 Vand.L.Rev. 93, 96 (1972). By adopting this view we do not imply that a defendant may not be entitled to jury instructions on misuse. The usual procedure obtains that the trial court must sua sponte instruct on the material issues in the case, including the pertinent principles to which it is alerted by requested instructions of either or both parties. Iowa R.Civ.P. 196.

B. Hughes' second challenge to the misuse instruction is that it erroneously held him to a "reasonableness" standard in the use of the product. The instruction directed the jury as follows:

The Defendant asserts the affirmative defense that the Plaintiff Vincent Hughes misused the stove. The burden of proof is on the Defendant.

The Defendant claims that this Plaintiff knew, or ought reasonably to have known, of the existence of the pilot light in the oven area and that it was not lit after the service call by the Thermogas service man. The Defendant claims further that the Plaintiff took no action to relieve against this situation but instead attempted to utilize the oven or broiler on the second day thereafter and that such constituted a misuse of the stove by this Plaintiff.

If you find the Defendant has proved the above, that such action or failure to act on the part of the Plaintiff was not reasonably foreseeably [*sic*] by the Defendant, and further that such action or failure to act by the Plaintiff was the proximate cause of the accident, then the Plaintiff may not recover.

If the Defendant has failed to so prove you shall proceed to the other instructions herein.

■ If Hughes is correct that this misuse instruction imposes a "reasonableness" standard on his conduct the instruction is indeed erroneous, for in some situations negligent use of a product by a consumer is reasonably foreseeable by the producer and therefore is not "misuse" for liability purposes. *See LeBouef v. Goodyear Tire & Rubber Co.*, 451 F.Supp. 253, 257–58 (D.La. 1978); *Ford Motor Co. v. Matthews*, 291 So.2d 169, 174 (Miss.1974); *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48, 57 (Okl.1976); 2 F. Harper & F. James, The Law of Torts § 28.6, at 1546 (1956); Noel, *Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk*, 25 Vand.L.Rev. 93, 97 (1972). To hold otherwise would interpose contributory negligence as a defense under the guise of misuse.

■ We find no necessity to resolve this issue, however, because the misuse instruction is objectionable on another ground; it gives undue emphasis, in such an instruction, to what Hughes personally knew or should have known.

■ If the ordinary user would reasonably be aware that use of a product in a certain way is dangerous, use of the product in that manner is less foreseeable by the producer than a use to which danger is not normally ascribed. But the ordinary user's awareness that use of the product in a certain manner is dangerous does not conclusively establish that such use is not reasonably foreseeable, for the defendant may in a given case reasonably foresee that a given product will be used by persons such as children who do not possess the knowledge of the ordinary user. *See, e. g., Porter*, 436 F.Supp. at 1382 (reasonably foreseeable that child would climb into shopping cart). Hence knowledge which can be reasonably attributed to the ordinary user is to be considered as a *factor* in determining whether the manner in which the plaintiff used the product was reasonably foreseeable.

The problem with the misuse instruction here is that it specifically directed the jury to consider what *Hughes* knew or ought reasonably to have known. What *Hughes* knew or should have known about the pilot light has slight relevance to the issue of whether Magic Chef should reasonably have

foreseen the use to which the stove was put. The personal characteristics of users or, in this case, knowledge of users, becomes relevant to foreseeability of use only when the characteristics are attributable to a substantial group of users. *Cf.* Noel, *supra,* at 105 (use by allergic consumer is foreseeable if member of an appreciable class). By including a specific reference to what *Hughes* knew or should have known, the misuse instruction invited the jury to consider a matter of little relevance to the issue it had to resolve—whether Magic Chef should reasonably have foreseen that users would attempt to operate the stove after an interruption in gas service without first igniting all the pilot lights.

■ We thus hold that on retrial misuse is not to be treated in the jury instructions as an affirmative defense. Instead, the instructions with respect to the use to which the stove was put must place the burden of proof on Hughes to establish by a preponderance of the evidence that the use made of the stove was reasonably foreseeable by Magic Chef. Reference to knowledge reasonably attributable to the ordinary user may be made, but the instruction must make clear that such knowledge is one factor to be weighed in determining whether Hughes' manner of using the product was reasonably foreseeable by Magic Chef. If on retrial Hughes proves by a preponderance of the evidence that the use made of the stove was reasonably foreseeable and that the stove was unreasonably dangerous when so used, then he will have established the first element of his case; otherwise the case is over.

■ III. *Instruction on assumption of risk.* Hughes contends finally that the trial court's assumption of risk instruction was erroneous in not requiring Magic Chef to prove he was aware of the danger involved in attempting to operate the stove as he did. The instruction reads thus:

The Defendant asserts the affirmative defense of assumption of risk against Plaintiff Vincent Hughes. The burden of proof as to this defense is on the Defendant.

You are instructed that when one does an act, or fails to act, knowing the danger to himself, and with such knowledge voluntarily proceeds he assumes the risk of injury proximately resulting and may not recover therefore from another.

In this case if you find the Defendant has proven that this Plaintiff knew of the pilot light in the oven and that it was unlit, but proceeded voluntarily to use the stove in that condition and that such action, or failure to act, on his part was the proximate cause of the accident, then he may not recover from the Defendant.

If the Defendant has failed to so prove you shall proceed to the other instructions herein.

Hughes' argument has merit that this instruction omitted an essential element of assumption of risk. That defense requires assumption of a *known risk. Compare Froman v. Perrin,* 213 N.W.2d 684, 689 (Iowa 1973) (negligence), *with* Restatement Second of Torts § 402A, Comment n (1965) (strict liability). The second paragraph of the instruction correctly stated that a plaintiff who assumes the risk must act with knowledge of the danger to himself but the following paragraph, which specifically stated what Magic Chef had to prove, made no mention of Hughes' awareness of danger. The instruction was fatally defective.

■ In addition the assumption of risk instruction failed to state that the user must *unreasonably* assume a known risk in order for the defense to apply. *See* W. Prosser, The Law of Torts § 79, at 523 (1971); Annot., 46 A.L.R.3d 240, 253–54 (1972); Restatement Second of Torts § 402A, Comment n (1965). The instruction was also defective in that respect.

Hughes' motion for new trial should have been sustained.

REVERSED.