OLDMAN *v.* MELTON, ADMINISTRATOR.

4-6956                                        168 S. W. 2d 387

Opinion delivered February 8, 1943.

*Carmichael & Hendricks,* for appellant.

*Rose, Loughborough, Dobyns & House,* for appellee.

GRIFFIN SMITH, C. J. In *Holloway* v. *Parker,* 197 Ark. 209, 122 S. W. 2d 563, 119 A. L. R. 1359, it was held that Lonoke circuit court did not err in rendering judgment on a jury's finding that a document purporting to be the last will of Mrs. Emma M. Thompson was invalid.

Holloway was appointed administrator of the estate. He was succeeded by John M. Bransford, and Bransford, in turn, was succeeded by Melton, to whom letters were issued October 5, 1940.

A diamond ring is the subject of controversy resulting in this appeal. Holloway was Mrs. Thompson's foster son, and Mrs. Oldham was Mrs. Thompson's sister. Following Mrs. Thompson's death, Holloway exhibited to Mrs. Oldham what he said was Mrs. Thompson's will. Believing it to be genuine, Mrs. Oldham asked Holloway if the meaning was that he "got everything." To this question there was an affirmative reply. Mrs. Oldham, according to her testimony, then remarked that if Holloway succeeded to the property, "I wish you would give me that ring." He answered: "I think the sisters ought to have the personal property, and I will give you that ring." This conversation occurred the day following burial of Mrs. Thompson.

Mrs. Oldham further testified that at the time Holloway gave her the ring she believed Mrs. Thompson had made the will, ". . . but later on [I] became suspicious about it." Two trials were required to determine validity of the will, the first resulting in a hung jury. At the second trial Mrs. Oldham testified in behalf of the contestants.

In January, 1937, Mrs. Oldham gave the ring to her daughter, Lillian, who is appellant here.

In December, 1941, Melton sought to replevy the ring. When the defendant's demurrer was overruled an answer was filed in which the administrator's right to recover in the form of action instituted was challenged. It was also alleged on information that there were no debts against the estate; that it should have been closed, and that the cause sued on had not accrued

within three years. The statute of limitation was pleaded. It was also alleged that a valid will executed by Mrs. Thompson in 1916 directed that ''The rest of my property and belongings [shall] be divided equally between my [six] sisters, after all expenses have been paid.'' The ring, it was said, had been claimed by Lillian ''openly, adversely, notoriously, and continuously since January, 1937.'' In an amendment to the answer it was averred that ''. . . the proportionate part of the estate that would have gone to [Mrs. Lillian M. Oldham, appellant's mother] was more valuable than the ring, and the property received by other sisters in the distribution under said will [of 1916] is still held by them as their individual property.''

In the motion for a new trial eighteen errors are assigned, four of which are argued in appellant's brief. First, it is contended evidence did not support the verdict; second, title to the ring was a prerequisite to the action; third, the administrator, who had personally purchased individual interests of beneficiaries, acted illegally; and, fourth, jewelry cannot be replevied from one who has it on his or her person.

We are referred to § 11373 of Pope's Digest where it is provided that a plaintiff's cause of action, to be sustained over a plea of limitation, must have occurred within three years. Argument is that suit might have been brought at any time subsequent to January 29, 1937, when Mrs. Oldham gave the ring to her daughter, but not after three years.

When asked why he delayed taking legal action, the administrator replied that appellant's brother had told him Miss Oldham would return the property. Appellant's counsel commented that he thought the testimony was objectionable, but the court did not rule on its competency; neither was there an exception, nor an express objection. *Cogswell* v. *McKeogh,* 46 Ark. 524. It was conceded by the administrator that the brother did not have control over his sister's actions, and that he was merely expressing an opinion.

Through testimony of Mrs. B. E. Dunaway it was developed that Mrs. Oldham had said the family wanted

Lem Boone to be appointed administrator. Mrs. Oldham told Mrs. Dunaway she intended to turn the ring over to Boone. This conversation occurred during or immediately following second trial of the will controversy.[1]

It is insisted that because at the time Mrs. Dunaway had her conversation with Mrs. Oldham the latter had parted with the ring, such testimony has no direct bearing on the case, it being without probative value or significance.

Melton testified that when he purchased the interest of Mrs. May N. Elcan (one of the six sisters), Mrs. Elcan, in discussing the ring, said ". . . that is my sister's, and I don't want to put it in [the writing] that I am selling the diamond ring."

A stipulation is that the ring ". . . belonged to Mrs. Emma Thompson in her lifetime; and upon her death became part of the assets of her estate."

In substance, appellant was asked whether, if convinced that a person who gave property to her was without title, she would surrender it. The answer was: "Yes, if [the party making demand proved to be the lawful owner], and I felt that he was entitled to it more than I was, I certainly would [surrender it"].

There is other testimony touching upon the intentions of appellant, the purposes her mother had in mind regarding the ring, and failure of the administrator to make demand in a timely manner.

From evidence of this character there was support for the jury's apparent belief that while in form Mrs. Oldham gave the ring to her daughter, she did so with the mental reservation that title was subject to determination.

There was no intention to take from the estate assets which rightfully belonged to it. In the same spirit appellant took possession of the so-called gift.

. . .

Legal status of the estate was uncertain when the will exhibited by Holloway was questioned. The record reflects a fact quite generally known: that is, appellant,

---

[1] The judgment was rendered February 9, 1938.

her mother, and those directly affected, are highly respected, responsible people. Appellant's statement to the effect that she would not want property unless she felt her title was superior to that of another contending for it, is typical of the position the principals might be expected to take.

The jury no doubt concluded from the evidence before it that although Mrs. Oldham ''gave'' the ring to her daughter, the transaction was tentative. The estate had not been settled. Much was to be done before individual interests became vested.

.    .    .

Regardless of benefits flowing from the will of 1916, Melton was entitled to receive assets of the estate for purposes of administration. Special ownership, with the right of possession, give the right to replevy. See *Lemon's Heirs* v. *Rector et al.,* 15 Ark. 436.[2]

The practice of an administrator in buying individual interests of beneficiaries is not to be commended; but that question is not properly before us.

.    .    .

Final argument is that jewelry, or other articles of personal adornment, cannot be replevied. Judgment in the instant case was in the alternative: for return of the ring, or payment of its equivalent, $750.

We think the verdict was based upon belief of jurors that there was no intention to withhold the ring from the true owner. There was testimony of a substantial nature upon which this finding could rest. This being true, criticism of Instruction No. 3, given at appellee's request, and the court's refusal to give appellant's requested Instruction No. 2, are eliminated as prejudicial factors.

Affirmed.

It is Mr. Justice McFaddin's view that the three-year statute of limitation applies. He also thinks that appellee, before resorting to replevin, should have proceeded in probate court against the prior administrator

[2] See Prater, Adm'r v. Frazier and Wife, 11 Ark. 249.; Pryor, et al. v. Ryburn, 16 Ark. 671; Whelan v. Edwards, 31 Ark. 723; Garrett v. McAtee, 195 Ark. 1123, 115 S. W. 2d 1092.

under § 44 of Pope's Digest, and that appellee should have sought probate court authority before invoking circuit court jurisdiction.