W. G. SHOOK ET AL *v.* MRS. JACK KELLAR ET AL

5-4059                                        408 S. W. 2d 880

Opinion delivered December 12, 1966

*Gordon & Gordon,* for appellant.

*Felver A. Rowell Jr.,* for appellee.

PAUL WARD, Justice. On May 17, 1965 Mrs. Jack Kellar and her fifteen year old daughter, Rita (appellees) were injured when the car in which they were riding was struck by a truck operated by William Shook and W. G. Shook (appellants). The collision resulted in severe damages to appellees.

A suit resulted in the following judgments against appellants: for injuries to Mrs. Kellar $5,200; for injuries to Rita Kellar $25,000, and; for medical expenses $1,300.

For a reversal appellants urge only one point:

"The verdicts in the amounts of $5,200 for Mrs. Kellar and $25,000 for Rita Kellar are excessive."

First, it is noted that there is no objection to the judgment for $1,300 for medical expenses for Rita and there is no question about negligence on the part of appellants. The only issue is whether the record discloses substantial evidence to support the jury's verdict for $5,200 and the verdict for $25,000.

*Mrs. Kellar's* testimony, in substance. As a result of the accident she was knocked unconscious for a short time; she was in the hospital from Tuesday (the day she was injured) until Friday morning; she received a sizeable cut on her right elbow; she says she had and still has pains in her back and neck; sometimes her head suddenly "jerks", and on one occasion it happened in church causing her to almost faint; she has headaches and dizzy spells at times; she is a schoolteacher, and had to miss nearly two weeks; she doesn't feel able to teach but can't afford to stop—when she arrives at home each day she has to go to bed; she needs to attend summer school but is unable to do so. Much of the above testimony was corroborated by her husband.

Dr. Dunaway, who treated Mrs. Kellar, testified in substance: he took seven stitches in treating the gash on her right elbow. After she left the hospital he saw her again in about two weeks; she was complaining about pains in her back and neck, and he gave her medicine to ease the pain and to help her sleep. He saw her about a week before the trial and she was still complaining of pains in her neck and back, and she appeared to be real uncomfortable because of pains in the region of the tail bone, and; she will continue to suffer.

We feel it would serve no useful purpose to refer to numerous decisions of this Court wherein we have both affirmed and reduced jury verdicts in cases similar to

618

this one. Such comparisons usually are not helpful. In the case of *Turchi* v. *Shepherd*, 230 Ark. 899, 327 S. W. 2d 553, we expressed this view in the following language:

> "A comparison of awards made in other cases is a most unsatisfactory method of determining a proper award in a particular case, not only because the degree of injury is rarely the same, but also because the dollar no longer has its prior value."

In cases of this nature we cannot formulate a better rule than the one set forth in *Missouri Pacific Transportation Company* v. *Simon,* 199 Ark. 289 (p. 300), 135 S. W. 2d 336, and repeated in *Arkansas Amusement Corporation* v. *Ward,* 204 Ark. 130 (p. 141), 161 S. W. 2d 178. It reads:

> "A verdict will be set aside by an appellate court as excessive where there is no evidence on which the amount allowed could properly have been awarded; where the verdict must of necessity be for a smaller sum than that awarded; where the testimony most favorable to the successful party will not sustain the inference of fact on which the damages are estimated; where the amount awarded is so excessive as to lead to the conclusion that the verdict was the result of passion, prejudice . . . or of some error or mistake of principle, or to warrant conclusion that the jury were not governed by the evidence."

Measured by the above rule, we cannot say the verdict of $5,200 is excessive.

*Rita Kellar* testified, in substance: she was fifteen years old at the time of the accident; she was knocked unconscious and didn't revive until she was being taken to the hospital where she remained three days; she was cut by glass from the broken windshield of the car in which she was riding; she received a long gash on the back of her head, also numerous cuts on her arm and

face; she had plastic surgery, is very nervous, and often has headaches. She was treated by Dr. Dunaway and Dr. Stuckey. She was corroborated by her mother who testified her daughter was very conscious of the scars on her arm and face, and will not wear sleeveless dresses.

Dr. Stuckey treated the scars on Rita's face and arms with plastic surgery. He testified, in substance: There were three lacerations on her face and many lacerations (about 15) on her arm; the scars on her face were on the cheek and near one eye; there will always be visible scars on her face, and they will need revision later; the scars on the face run vertically which means they are harder to erase or conceal. There were so many scars on the arm he did not attempt to count them; Rita is very self-conscious of the scars, she is nervous, has headaches, and is on edge all the time; she has been taking a bottle of aspirins a day for sometime.

Again applying the rule previously set forth above we are unwilling to say the verdict of $25,000 is not supported by substantial evidence.

The decisions we have reached above are, of course, accompanied by some degree of doubt and uncertainty. We cannot know for a certainty that the pains, nervousness and embarrassment revealed by the testimony are real or fanciful, or whether they will shortly diminish or continue to increase as the years go by, but we do know the jurors were in a better position than we are to judge these matters.

Therefore, since the record contains substantial evidence to sustain the verdicts we are unwilling to say they are excessive.