A. D. LUSTER, Appellee,

A's Fishhouses, Inc.,

v.

RETAIL CREDIT COMPANY, Appellant.

No. 77–1634.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1978.

Decided April 11, 1978.

As Modified on Denial of Rehearing and
Rehearing En Banc June 7, 1978.

Stephen M. Reasoner, of Barrett, Wheatley, Smith & Deacon, Jonesboro, Ark., for appellant; J. C. Deacon, Jonesboro, Ark., on brief.

Bill W. Bristow, of Seay & Bristow, Jonesboro, Ark., for appellee; Donald F. Seay, Jonesboro, Ark., on brief.

Before GIBSON, Chief Judge, STEPHENSON, Circuit Judge, and BECKER,[*] Senior District Judge.

STEPHENSON, Circuit Judge.

This appeal is from a jury verdict for plaintiff, A. D. Luster, in a libel action arising out of statements in a fire and mercantile report compiled by defendant Retail Credit Company.[1] Jurisdiction rests upon diversity of citizenship and the amount in controversy. We affirm in part and reverse in part.

Plaintiff was engaged in the operation, ownership and management of specialty restaurants known as A's Fishhouses, Inc.[2] On February 26, 1975, one of plaintiff's restaurants located in Jonesboro, Arkansas, was severely damaged by fire. On the date of the fire the restaurant was insured by St. Paul Insurance Company through plaintiff's producing agent, Gatz Insurance Agency of Jonesboro.

After the fire St. Paul Insurance Company requested that the producing agent find other coverage. Robert Davidson of the Gatz Agency was unsuccessful in placing coverage with other standard rate companies. The Gatz Agency contacted the Robert Newell Brokerage firm in Little Rock in an attempt to secure coverage from a surplus line company which insures high risk businesses. Newell in turn contacted Bowes and Company in Dallas, Texas, a

---

[*] The Honorable William H. Becker, Senior United States District Judge for the Western District of Missouri, sitting by designation.

[1.] The Honorable Terry L. Shell, United States District Judge for the Eastern District of Arkansas, presided.

[2.] A's Fishhouses, Inc. was a plaintiff in the trial of this action. No appeal was taken from the jury's verdict in favor of the defendant on A's Fishhouses, Inc. claims.

surplus line intermediary, who agreed to accept the coverage of the restaurants. Thereafter, Bowes and Company requested a fire and mercantile report from defendant Retail Credit Company concerning plaintiff and his business.

Defendant, through its employee N. J. McMillon, compiled a fire and mercantile report on plaintiff and his business. The report indicated plaintiff had suffered a fire loss at his restaurant in Jonesboro, it was not expected to be reopened, arson was suspected, the author had been unable to locate plaintiff, his business had been on the decline, and he was delinquent on an indebtedness at the bank. (See the full report at note 6, *infra*.) The report was false in many material respects.

According to McMillon's own testimony the report was compiled solely on the basis of his conversations with three individuals. McMillon talked with an employee at the bank who told McMillon "it was his understanding that they did not plan to reopen the business." McMillon also testified that this source also told him that there had been unusual circumstances surrounding the fire and a search was out for one particular person. The bank employee denied discussing anything with McMillon other than plaintiff's loan with the bank.

McMillon's second source was a postal employee who told him that plaintiff's business was seemingly on the decline and "he had quit eating there because of some deterioration in the food and service." McMillon's final source was a former customer who said "he had quit eating there due to getting some food which was not to his liking," and "that his knowledge and opinion was that the business had been on the decline for some time."

McMillon testified that he tried to contact plaintiff or his wife at their residence but they were not home. He further testified that he did not contact either the fire department or the police department in an effort to confirm the statements made in the report that an investigation was being made concerning the fire, nor was any attempt made to contact plaintiff's C.P.A. to confirm the financial aspects of the report.

■ The defense of conditional privilege was available to defendant because the report was made by a mercantile agency to a customer having an interest in the matter. The court so instructed. In order to render a verdict for the plaintiff the jury had to find that the report was made with malice. The court, in its instruction to the jury, defined malice as the doing of a wrongful act with actual ill will or evil intent "or in the impersonal sense, as the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will." Defendant does not object to the court's instruction or the jury's finding on this issue. There is ample evidence to support the jury's finding of malice in an impersonal sense. *Dun & Bradstreet, Inc. v. Robinson,* 233 Ark. 168, 345 S.W.2d 34, 38–39 (1961).

The report was transmitted to defendant's branch office in Memphis, Tennessee, for transcription and subsequently was forwarded to Bowes and Company, plaintiff's insurer. Upon receipt of the report on April 14, 1975, Bowes and Company immediately called Robert Newell of the Newell Agency and advised Newell of the contents of the report and stated that they were mailing notice of cancellation for any coverage extended to plaintiff and his business.

Plaintiff first learned of this report when he was notified by Gatz Insurance Agency that his insurance was going to be cancelled due to the contents of the Retail Credit report. On April 28, 1975, plaintiff contacted defendant's branch office in Memphis and informed defendant that the report was false and very damaging to him and his business. On that same date defendant Retail Credit instituted an immediate reinvestigation. Later the same day new information obtained was conveyed to Bowes and Company by telephone and a written report was sent the following day. As a result, Bowes and Company changed its plan to cancel the insurance, and coverage to A's Fishhouses was continued, but at a rate

higher than previously had been agreed upon. Thereafter, plaintiff's business gradually declined until he ceased to do business in January 1976.

Trial was commenced on December 6, 1976. The jury returned a verdict for plaintiff, A. D. Luster, awarding him $50,000 in compensatory damages and $100,000 in punitive damages.

The first issue raised by defendant Retail Credit, which is reasserted in different form throughout its brief and argument, is that the trial court erred in holding that the defendant could be liable for all republications of the report which were reasonably foreseeable. Specifically, defendant objected to the admission of testimony concerning unauthorized republications; to the admission of testimony by plaintiff concerning damages which were the result of unauthorized republications; and the giving of a jury instruction which allowed the jury to find defendant liable for unauthorized republications if they found that such republications were reasonably foreseeable, while refusing defendant's requested jury instruction which stated that defendant could not be liable for unauthorized republications.

Defendant Retail Credit's contract with Bowes and Company provided that the information supplied was to be kept confidential and not released to any third person, except persons that might have a duty to pass upon the risk being insured.[3] The trial court admitted testimony which showed that the contents of the report were revealed to persons who did not have such a duty. The court allowed Davidson from the Gatz Insurance Agency to testify as to statements made by Newell as to the contents of the report and as to Davidson's discussions with the General Adjustment Bureau personnel concerning the contents and interpretation of the report. The court also allowed Bob Carlisle of the General Adjustment Bureau to testify about his discussions with Davidson concerning the contents and interpretation of the report. Finally, Bob Robertson, also of the General Adjustment Bureau, was allowed to testify as to his discussions with Carlisle as to the contents and interpretation of the report.

The courts are divided as to whether one accused of libel is liable for republication if it is shown that the republication was foreseeable as a natural and probable consequence of the original publication. *See generally* Annot., 96 A.L.R.2d 373 (1964); W. Prosser, Handbook of the Law of Torts § 112, at 762 (4th ed. 1971). In this diversity action we, of course, apply the substantive law of Arkansas.

In *Dun & Bradstreet, Inc. v. Robinson,* 233 Ark. 168, 345 S.W.2d 34 (1961), the Arkansas Supreme Court specifically refused to decide whether the law of Arkansas permitted recovery for unauthorized republications. The court stated:

> We see no need to discuss the issue of republication, i. e., when one may be liable for unauthorized republication of defamatory statements, since the instruction was favorable to the appellants, and appellee has made no complaint, and further, since we take the view that the evidence reflects a sufficient loss of customers and loss of credit from Dun & Bradstreet subscribers to justify the amount awarded.

*Id.* at 40.

In the absence of a controlling state decision it is the duty of a federal court to apply the rule it believes the state supreme court would follow. *Soo Line R.R. v. Fruehauf Corp.,* 547 F.2d 1365, 1373 (8th Cir. 1977). In the present case the district court implicitly held that the Arkansas Supreme Court, if directly confronted with the issue, would hold that a defendant could be liable for unauthorized republications if such republications were reasonably foreseeable.

---

**3.** The exact wording of the contract was as follows:

All reports, whether oral or written, will be kept strictly confidential: except as required by law, no information from reports will be revealed to the person reported on or to any other person except a person whose duty requires him to pass on the transaction in relation to which the report was ordered.

■ "[T]his court will give 'great weight' to the interpretations of state law reached by a trial judge who is familiar with local law." *Sherrill v. Royal Industries, Inc.,* 526 F.2d 507, 510 (8th Cir. 1975); *see Melia v. Ford Motor Co.,* 534 F.2d 795, 799 (8th Cir. 1976); *Nodak Oil Co. v. Mobil Oil Co.,* 533 F.2d 401, 406 (8th Cir. 1976). In view of the overall status of Arkansas libel law at this time we cannot say the trial court reached an interpretation of the law on this issue which is in conflict with Arkansas law. In the absence of authority to the contrary, it is not the duty of this court to instruct the Arkansas Supreme Court on the doctrinal path it should follow. We have simply concluded that the trial court made a reasonable interpretation of Arkansas law that will not be set aside, since we are cognizant of no Arkansas case law which requires us to find that the interpretation is erroneous. *Sherrill v. Royal Industries, Inc., supra,* 526 F.2d at 513.

Defendant further argues that even if foreseeability is the proper test, there was no evidence presented in this case to show that the republications were reasonably foreseeable. This contention ignores testimony in the record that the Gatz Insurance Agency, the producing agent, was listed on the report from defendant and that sometimes the producing agent is informed by insurance brokerage firms of bad credit reports and their contents, particularly when such reports lead to a cancellation of insurance placed through those brokerage firms by local independent producing agents. Furthermore, officials of both defendant and Bowes and Company testified that they had no knowledge of the terms of the contract between defendant and Bowes and Company which provided that republications were limited to certain individuals.

■ The issue of proximate cause is normally a question for the jury to decide. Here there is ample evidence to support the jury's finding that the republications might reasonably have been anticipated by the defendant.[4]

■ In a related appeal point defendant asserts that the trial court erred in allowing the plaintiff to testify that he suffered humiliation and embarrassment because he feared that the report was being circulated to unknown persons. Defendant states that there was no evidence produced that the report was so circulated. In a defamation case mental anguish and embarrassment are proper elements of damages. *See Braman v. Walthall,* 215 Ark. 582, 225 S.W.2d 342 (1949). Whether such mental anguish was a natural and probable consequence of the actions of defendant was a jury issue. The fact that the report was contained in the files of defendant, a large supplier of commercial credit reports, coupled with the testimony by defendant's official that when additional reports are requested, such files are used as a start for the reinvestigation, provide sufficient evidence from which the jury could properly find that plaintiff's mental anguish and embarrassment were natural and probable consequences of the release of the credit report.

Another related argument advanced by defendant, is that the trial court, through its instructions to the jury, allowed the jury to consider elements of damages for which there was no support in the record.[5] Spe-

---

4. Defendant relies heavily on the case of *Peacock v. Retail Credit Co.,* 302 F.Supp. 418 (N.D. Ga.1969), *aff'd,* 429 F.2d 31 (5th Cir. 1970), in which the Georgia district court held for the defendant on the basis of the state statute of limitations. The court stated in a footnote that republication could hardly be foreseeable in light of a contract provision, identical to the one in the present case, which prohibited republications. This case actually cuts both ways. Defendant was at least alerted by that case that one of its customers was revealing the contents of its reports despite the contract provision.

5. The jury instruction read as follows:
Plaintiff, A. D. Luster, is suing for the following elements of damage:
First: The nature, extent, and duration of any injury to the reputation of A. D. Luster.
Second: Any pain, suffering, mental anguish, humiliation and embarrassment experienced in the past and reasonably certain to be experienced in the future.

cifically, defendant contends that the injury to plaintiff's reputation and his loss of credit rating and credit availability were not supported by the evidence and should not have been submitted as elements of damage.

Defendant contends that the evidence fails to disclose that publication of the report caused any person to hold plaintiff in less esteem. Whether a defamatory statement is believed by those who hear it is relevant to the issue of damages. Even if the statement is disbelieved by the person to whom it is communicated, damages may be mitigated, but nevertheless awarded, to the plaintiff because the injury to the plaintiff's reputation has already occurred to some degree. *Braman v. Walthall, supra,* 225 S.W.2d at 348.

It is clear that plaintiff's ability to obtain credit became seriously impaired after the credit report compiled by defendant was sent to Bowes and Company. Whether this loss of credit was proximately caused by the report was for the jury to determine. The trial court properly instructed the jury on this issue.

Defendant's next claim of error concerns the admission of testimony by Davidson of the Gatz Insurance Agency, which was allegedly hearsay. Over the defendant's objection the court allowed Davidson to testify that Newell, who is now deceased, told Davidson that a Bowes and Company representative had told Newell that the defendant's report suggested arson and that he assumed it referred to the plaintiff.

The testimony objected to by the defendant was not hearsay because it was not admitted to prove the truth of the matter asserted. It was admitted solely to prove the fact that the words were said.

See Fed.R.Evid. 801(c); C. McCormick, The Law of Evidence § 249, at 588–89 (2nd ed. E. Cleary 1972). A proper limiting instruction was given the jury at the time of the disputed testimony.

Similarly, plaintiff's exhibits 15 and 16, letters written from Davidson to Newell and Harlan, executive vice president of Bowes and Company, were not hearsay because they were not offered to prove the truth of anything asserted in the letters. Rather they were introduced only to show Davidson had written the letters after he had been informed of the report in an effort to secure insurance coverage for plaintiff. The trial court properly instructed the jury that the letters were only being admitted for this limited purpose. The defendant's claims that the trial court erroneously allowed introduction of hearsay testimony are without merit.

Defendant next urges this court to reverse and remand for a new trial on the ground that the trial court's instruction defining defamation was erroneous. The instruction provided as follows:

Publication of a writing is libelous or defamatory to a person if it tends to impeach the honesty, integrity, virtue or reputation of a person and thereby exposes him to public hatred, contempt and ridicule. With regard to a company, publication of a writing is libelous or defamatory if it tends to impeach the corporate reputation and goodwill of that company.

The burden is upon the plaintiffs in this action to prove by a preponderance of the evidence that the statement or statements contained in the report were defamatory and that this meaning was, in fact, reasonably understood by at least one reader to whom Retail Credit Company could reasonably foresee that the

Third: The value of any other monetary losses suffered by A. D. Luster. ·

Fourth: The nature, extent, and duration of any injury to the credit rating of A. D. Luster and whether such injury is temporary or permanent; and

Fifth: The value of the loss of any credit of A. D. Luster and the present value of any credit reasonably certain to be lost in the future.

If you decide for A. D. Luster on the question of liability against Retail Credit Company, you must fix the amount of money which will reasonably and fairly compensate him for those elements of damage which you find were proximately caused by the alleged defamation by Retail Credit Company.

statement or statements would be published.

In determining whether the written words were defamatory, you must consider the report in its entirety and the words must be taken in their plain and natural meaning. In determining whether or not a reader or hearer reasonably understood the statement or statements in a defamatory sense, you must take into account the attendant circumstances known to the reader or hearer at the time it was heard or read.

Plaintiffs further contend that the statement or statements contained in the report pertaining to A. D. Luster, individually, were libelous per se. Words which are libelous per se or defamatory in themselves are words which, when published, the natural consequence of the publication is a damage. Under the law of Arkansas, if the words when considered as to their plain meaning and the circumstances attending their utterance import a charge of having been guilty of a crime or prejudice to a person or his trade, then the words are defamatory in themselves.

If you find that the statement or statements contained in the report were libelous per se, then plaintiff A. D. Luster is entitled to damages, if any, for humiliation, embarrassment and injury to his reputation, together with any other damages proved by the plaintiff by a prepon-

derance of the evidence proximately caused by acts of the defendant.

You may consider evidence of the lack of good character and reputation in determining what amount, if any, plaintiffs were damaged by defendant's report.

■ At trial the defendant objected to this instruction on the ground that it allowed the jury to find that the report was libelous per se. Defendant submitted a proposed instruction which would have told the jury that if the report was libelous, it was libel per quod as a matter of law. In Arkansas, if a defamation is actionable per se, then a jury may award general damages; if a defamation is not actionable per se then only special damages may be awarded. *Dun & Bradstreet, Inc. v. Robinson, supra,* 345 S.W.2d at 40. The trial court overruled the defendant's objection to the instruction now in dispute and refused to give defendant's requested instruction.

■ Under Arkansas law a defamation is libelous per se if it charges the commission of a crime. *Dean v. Black & White Stores, Inc.,* 186 Ark. 667, 55 S.W.2d 500, 501 (1937). The report in this case did not expressly state that the plaintiff was guilty of arson.[6] However, the report did state that the author of the report had been unable to locate the plaintiff; that unusual circumstances surrounded the fire, investigation was continuing and a search was out for one particular party but no arrests could

---

**6.** The entire report read as follows:

Report was delayed due to the inquiry being missent to Little Rock, AR.

1. Due to the present circumstances surrounding this coverage, we are submitting in memorandum form.

A's Fish House at 2701 E. Nettleton was almost totally destroyed by fire about 6 weeks ago. Fire occurred in the early hours of the morning, and the business has not been reopened. We have been unable to contact Mr. Luster, but close business and personal associates indicate that the business is not expected to be reopened.

There has been unusual circumstances surrounding this fire, investigation is still continuing and a search is out for one particular party in connection with the fire loss; but we have been unable to confirm any arrests at date. The total dollar damage could not be determined but it almost totally destroyed all fur-

nishings and fixtures in the building and contents are considered of little value at the present time.

Mr. Luster's business has been on the decline for some time, and he had been delinquent on some note payments in connection with the business. One local bank still has an account of $3380 on which he has been in the arrears most of the time for the past time of a year and he was 2 months behind on the payments at the time of the fire. Nothing has been paid on it since that time. We have confirmed that there are at least 4 or 5 other banks involved in the financing of this business and these banks are located in Southeast Missouri and northeast Arkansas.

Due to the total loss as indicated, we are not giving a description of the building and further details at this time.

be confirmed at the present time; and that plaintiff's business had been on the decline for some time and he was behind in his loan payments to a bank.

■■■ In deciding whether words are actionable per se the entire publication must be construed and the words taken as they are commonly understood. *Lloyd v. Gerber Products Co.,* 260 F.Supp. 735, 739 (W.D.Ark.1966); *Goodman v. Phillips,* 218 Ark. 169, 235 S.W.2d 537, 539 (1951); *Greer v. White,* 90 Ark. 117, 118 S.W. 258, 259 (1909). Reasonable minds could interpret the report as charging the plaintiff Luster with the crime of arson. Thus, we are satisfied that the question of whether the report was libelous per se was properly submitted to the jury.

Defendant also objected to this instruction at trial on the ground that the instruction allowed the jury to hold the defendant liable if they found that the report was defamatory and was so understood by at least one person to whom the defendant could reasonably foresee that the report would be published. Defendant argues that the undisputed evidence showed that it published the report only to Bowes and Company and the report was not considered defamatory by the officer at Bowes and Company who read the report.

■■■ This contention has been addressed earlier in this opinion and decided adversely to the defendant. We reiterate that the trial court's determination that the defendant could be liable for any republication which was reasonably foreseeable is a reasonable interpretation of Arkansas law and, consequently, will not be overturned by this court. Furthermore, the conditional privilege did not protect defendant because there was evidence from which the jury could find the report was made with malice, i. e., reckless disregard of the consequences.

Finally,[7] defendant objected to the part of the instruction which allowed the jury to find the report libelous per se if they be-

lieved it caused prejudice to the plaintiff's trade. Defendant claims that under Arkansas law a statement pertaining to a person's business or trade is not libelous per se unless it imports dishonesty. However, the case of *Reese v. Haywood,* 235 Ark. 442, 360 S.W.2d 488 (1962), acknowledges that in Arkansas a defamation which prejudices a plaintiff in his trade or business may be libelous per se under certain circumstances without alleging dishonesty. In *Reese,* the Arkansas Supreme Court held that a publication stating that a farmer owed a past due account was not actionable per se. The court stated:

Damage is not necessarily a natural consequence of the publication of the bare statement that a farmer owes a past-due account to an implement company, with no suggestion of a dishonest or fraudulent refusal to pay. While such a publication might be defamatory in itself in the case of a trader or one in whose business credit is an important asset, the contrary rule prevails where the plaintiff is not a trader.

*Id.* at 489.

■■■ In the present case the plaintiff presented evidence which demonstrated that being able to obtain credit was an essential element of his business. Other evidence showed that plaintiff lost his ability to obtain credit after the report was published. Therefore, it was for the jury to decide whether the report was the proximate cause of this loss of credit and whether it was libelous per se because it prejudiced the plaintiff's trade or business.

■■■ On appeal defendant is also claiming that the instruction was in error because it allowed the jury to consider extrinsic evidence in determining whether the report was libelous per se. This contention was not one of the specific objections made to the instruction at trial.

Fed.R.Civ.P. 51 provides in part:

---

7. Other objections to the instruction were raised at trial by the defendant but they have not been asserted on this appeal.

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

"Rule 51 requires an objection to be 'sufficiently specific to bring into focus the precise nature of the alleged error.'" *Wilson v. Crouse-Hinds Co.,* 556 F.2d 870, 875 (8th Cir. 1977) (en banc), *quoting from Palmer v. Hoffman,* 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645 (1943). The purpose of this rule is to inform the trial judge of possible errors so that he may have an opportunity to correct the errors at that time. *Robbins v. Farmers Union Grain Terminal Ass'n,* 552 F.2d 788, 795 (8th Cir. 1977). Rule 51, which precludes appellate review of instructions on the basis of objections not specifically stated at trial, has been strictly adhered to in this circuit. *See, e. g., Wilson v. Crouse-Hinds Co., supra,* 556 F.2d at 875; *Alabama Great S. R.R. v. Chicago & N.W. Ry.,* 493 F.2d 979, 984 (8th Cir. 1974); *Klapmeier v. Telecheck International, Inc.,* 482 F.2d 247, 255 (8th Cir. 1973); *Lowe v. Taylor Steel Products,* 373 F.2d 65, 67–68 (8th Cir. 1967); *Arrow Aviation, Inc. v. Moore,* 266 F.2d 488, 494 (8th Cir. 1959).

"As we observed in *Figge Auto Co. v. Taylor,* 325 F.2d 899 (8th Cir. 1964), 'If there is to be a plain error exception to Rule 51 at all, it should be confined to the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings.' *Id.* at 907, quoting 2B Barron and Holtzoff, Federal Practice and Procedure 475 (1961 ed.)." *Horace v. St. Louis S.W. R.R.,* 489 F.2d 632, 634 (8th Cir. 1974). This is not such a case.

The precise instruction language now being objected to is: "Under the law of Arkansas, if the words when considered as to their plain meaning *and the circumstances attending their utterance* import a charge of having been guilty of a crime or prejudice to a person or his trade, then the words are defamatory in themselves." (Emphasis added.)

■ This sentence comports with the modern rule of libel, *see* W. Prosser, Handbook of the Law of Torts § 112, at 762–63 (4th ed. 1971), and has a basis in Arkansas law, *Goodman v. Phillips, supra,* 235 S.W.2d at 539; *Dean v. Black & White Stores, Inc., supra,* 55 S.W.2d at 501; *Greer v. White, supra,* 118 S.W. at 259. Furthermore, in the instant case the attendant circumstances were set out in the report itself. Since the whole article must be considered in a libel action, it is difficult to see how the defendant was prejudiced by the alleged error in the instruction which is now asserted. *See* Fed.R.Civ.P. 61. Assuming arguendo that this disputed language, in light of the more recent Arkansas Supreme Court case of *Dun & Bradstreet, Inc. v. Robinson, supra,* 345 S.W.2d at 40, incorrectly states the law of Arkansas, we are unable to say that it is obvious error or that it so seriously affected the proceedings as to fall within the plain error exception to Fed.R.Civ.P. 51.

■ Defendant's final appeal point is that the jury's verdict in the amount of $50,000 in compensatory damages and $100,000 in punitive damages is unsupported by the evidence in the case, or, even if supported by the evidence, is excessive. After a careful review of the record we agree with the defendant that the evidence in this case does not justify an award of punitive damages.

■ In Arkansas, a jury may not give punitive damages unless it is shown that the defendant acted with actual ill will or express malice. In *Braman v. Walthall, supra,* 225 S.W.2d at 347, the court stated:

In *Gaines v. Belding,* 56 Ark. 100, 19 S.W. 236, the court said: "Where the words spoken are actionable per se, prima facie the law implies malice, and the jury can award compensatory damages only; but cannot award exemplary or punitive damages without proof of express malice. * * * Express malice may be inferred from all the circumstances of the case, but it is not to be inferred from the facts alone that the words are false and injurious to the plaintiff, although an implication of malice arises from these facts that will warrant compensatory damages."

*See also Greer v. White, supra,* 118 S.W. at 260 (gross negligence did not call for more than compensatory damages).

Plaintiff concedes that there is no proof in the record that defendant acted with actual ill will or evil intent. Furthermore, the uncontroverted evidence shows that as soon as the accuracy of the report was questioned, the defendant acted swiftly. In the afternoon of the same day on which plaintiff informed defendant that there were errors in the report the defendant's Memphis office called the supervisor of the Jonesboro office and requested an immediate reinvestigation. The information obtained from this reinvestigation was communicated later the same afternoon to Bowes and Company. The corrected second report was sent to Bowes and Company the following day. Consequently, Bowes and Company did not cancel the insurance and coverage to plaintiff was continued. The immediate action taken by defendant mitigates against an award of punitive damages. The absence of proof of ill will or express malice precludes award of punitive damages. Under the circumstances of this case we are satisfied that the award of punitive damages against the defendant is not warranted. *Dun & Bradstreet, Inc. v. Nicklaus,* 340 F.2d 882 (8th Cir. 1965), is distinguishable factually from the present case. In *Nicklaus,* the defendant published a second false report after being notified that its first report was incorrect. In the present case, as indicated above, the defendant took prompt and effective remedial action upon being informed of its error.

Although, as discussed *infra,* we decline to find the $50,000 award of compensatory damages excessive, we are convinced that an additional award of punitive damages amounts to "plain injustice." It is our view that justice can best be served by ordering a remittitur of all punitive damages. *See Bankers Life & Cas. Co. v. Kirtley,* 307 F.2d 418 (8th Cir. 1962). *See also Handi Caddy v. American Home Prod. Corp.,* 557 F.2d 136, 141–42 (8th Cir. 1977).

When the evidence is viewed in the light most favorable to plaintiff, *Dun &* *Bradstreet, Inc. v. Nicklaus,* 340 F.2d 882, 885 (8th Cir. 1965), we conclude that there is sufficient evidence to support the award of compensatory damages. The intangibles of mental anguish, embarrassment, and injury to reputation are very difficult to measure precisely. Historically, juries have been given broad discretion in arriving at a dollar figure to compensate a plaintiff who has suffered injuries which are not capable of definite ascertainment. *See Dun & Bradstreet, Inc. v. Robinson, supra,* 345 S.W.2d at 45; *Dunaway v. Troutt,* 232 Ark. 615, 339 S.W.2d 613 (1960). *See also Grove v. Dun & Bradstreet, Inc.,* 438 F.2d 433, 440 (3d Cir.), *cert. denied,* 404 U.S. 898, 92 S.Ct. 204, 30 L.Ed.2d 175 (1971); W. Prosser, Handbook of the Law of Torts § 112, at 761 (4th ed. 1971). Furthermore, "Where the slanderous words are actionable *per se,* the plaintiff is entitled as a matter of law to compensatory damages, and is not required to introduce evidence of actual damages to entitle him to recover substantial damages. In such a case the plaintiff need not prove actual damages in order to recover substantial damages." *Dunaway v. Troutt, supra,* 339 S.W.2d at 617–18, *quoting from Taylor v. Gumpert,* 96 Ark. 354, 131 S.W. 968 (1910).

As early as 1960 the Arkansas Supreme Court upheld an award of $50,000 in compensatory damages in a defamation suit. Thus, no claim can be made that the award sustained here is so large that the Arkansas Supreme Court would under no circumstances allow it to stand. *Dunaway v. Troutt, supra. See also Goodman v. Phillips, supra,* 235 S.W.2d at 539. We are extremely reluctant to overturn a trial court's denial of a motion for a new trial on the grounds that the jury's verdict was excessive and decline to do so in this case. We are not convinced that the jury's award of $50,000 is "shocking" or "plain injustice." *See, e. g., Morrow v. Greyhound Lines, Inc.,* 541 F.2d 713, 720–22 (8th Cir. 1976); *Scoville v. Missouri Pacific R.R.,* 458 F.2d 639, 647–49 (8th Cir. 1972); *Solomon Dehydrating Co. v. Guyton,* 294 F.2d 439, 447–48 (8th Cir. 1961).

Accordingly, we conclude that the award of compensatory damages should be af-

firmed upon condition that the plaintiff elects within 30 days of the filing of this revised opinion to file a remittitur for all punitive damages. If remittitur is not so filed with the clerk of the district court, the judgment will be reversed in its entirety and the case will stand remanded to the district court for a new trial upon all issues, including liability, compensatory damages and punitive damages.