Mike GAROOGIAN d/b/a Atlas Truck & Equipment Company, Appellee,

v.

Gerald MEDLOCK, J. E. Medlock and J. Medlock Produce, Inc., Intervenor-Appellants.

No. 78–1060.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 1, 1979.

Decided Feb. 8, 1979.

---

Frank W. Booth, Fort Smith, Ark., for intervenor-appellants.

H. Ray Hodnett, Fort Smith, Ark., for appellee.

Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

Mike Garoogian brought this diversity action in the Western District of Arkansas to replevy a 1975 Kenworth truck tractor allegedly wrongfully detained by defendant J. E. Medlock. The case was tried to a jury and the jury awarded possession of the vehicle and $15,200 damages to Garoogian. Medlock appeals. We affirm the judgment in favor of Garoogian upon the condition that he file an appropriate remittitur for the amount of damages we find to be unsubstantiated by the evidence.

The facts of the case are complicated and it is necessary to recite them in some detail. For convenience in understanding the order of events the facts are stated chronologically.

On December 16, 1974, the state of Oklahoma issued to Carroll J. Allen a certificate of title to the 1975 Kenworth truck tractor in question. On October 1, 1976, Allen leased the tractor to J. Medlock Produce, Inc., an Arkansas corporation of which defendant J. E. Medlock is president. The terms of the lease provided that the lessee was to have control and use of the vehicle as though he was the absolute owner. The lease was to be in effect until terminated by "mutual agreement." On February 27, 1977, Allen left the produce company driving the tractor with the company's loaded trailer en route to California. Thereafter Medlock had no knowledge of the whereabouts of the vehicle for several months.

On March 1, 1977, Mike Garoogian, doing business in Fresno, California, as Atlas Truck & Equipment Company (hereinafter Garoogian), was contacted by Juanita and Twain Scow. The Scows wished to purchase the tractor from Allen, but needed assistance in financing. By purchase order dated March 5, 1977, Garoogian sold the tractor to the Scows. Garoogian and Twain Scow entered into a purchase money security agreement which provided that upon Scow's default, Garoogian could, without notice and without demand, declare Scow's rights terminated and immediately take possession of the tractor.

On March 7, 1977, Allen executed a bill of sale of the tractor to Garoogian. Garoogian paid Allen $2,500 and paid off the balance due ($19,803.52) on Allen's account with Paccar Financial Corporation. By the authorization for payoff Allen authorized Paccar to surrender the ownership certificate properly endorsed and released upon payment of this balance. Also on March 7, Garoogian entered into an assignment and repurchase agreement with the Bank of America National Trust and Savings Association. Garoogian assigned his contract rights under the purchase money security agreement to the bank and agreed that upon Scow's default he would repurchase the contract on demand from the bank for the unpaid balance. By the terms of the

agreement the vehicle was to be registered in California with the bank as legal owner.

On July 30, 1977, Medlock caught up with Allen, claiming damages under the lease agreement. Allen, in response, executed an assignment of the Oklahoma title, which had been held in the produce company files, leaving open the name of the assignee. In early August 1977 Medlock regained possession of the tractor from the Scows and returned the vehicle to Arkansas.

In the interim, the Scows had defaulted and on August 4 or 5, the bank made an oral demand that Garoogian repurchase the contract. Upon learning that Medlock had the truck and intended to keep it, Garoogian filed this replevin action against Medlock on August 16, 1977.

On August 17, 1977, a hearing was held at which Garoogian submitted an affidavit of ownership, the bill of sale and evidence of his payoff to Paccar Financial Corporation, and posted a $44,000 bond. Over the objections of Medlock's attorney, the court ordered the United States Marshal to seize and hold the vehicle. Since the tractor could not be found, Garoogian applied and secured a writ of *capias ad respondendum* against Medlock on August 30, 1977. Shortly after his arrest the tractor was turned over to the marshal and Medlock was released. On September 19, 1977, a second hearing was held. At the conclusion of the hearing, the court determined Garoogian had made out a prima facie case entitling him to temporary possession and use of the tractor pending trial, and ordered release of the tractor to him.

On November 4, 1977, the bank made a written demand that Garoogian repurchase the contract and on November 7, 1977, Garoogian paid the bank the amount owed under the repurchase agreement ($29,-232.43).

Prior to trial J. Medlock Produce, Inc. intervened and filed an answer and counterclaim which alleged Garoogian maliciously and recklessly interfered with the lease agreement and maliciously caused Medlock's arrest.[1] Garoogian counterclaimed alleging that the intervenor was jointly and severally liable with Medlock individually. The case was tried to a jury and the jury returned a verdict finding Garoogian the owner of the tractor and entitled to possession, and assessing damages for wrongful detention of the vehicle against defendant J. E. Medlock individually in the amount of $15,200. On December 2, 1977, judgment was entered in accordance with the jury verdict plus interest and costs.

On appeal Medlock raises numerous issues. The most substantial question is the sufficiency of the evidence to support the verdict.[2] Specifically, Medlock contends that Garoogian failed to prove the ownership interest and right to possession required by Arkansas law to maintain an action in replevin, and failed to prove his damages.

Our review of the evidence is governed by certain well-established principles. Under Arkansas law,[3] a "reviewing court is bound to examine the evidence in the light most favorable to the appellee * * * and bound to sustain the jury verdict if there is any substantial evidence to support it * * *." *Arkansas Power & Light Co. v. Johnson,* 538 S.W.2d 541, 548 (Ark.1976) (citations omitted). The reviewing court is "not concerned with determining where the preponderance of the evidence lies, but only

---

1. These claims were not submitted to the jury. The judge instructed the jury that the lease was invalid because it was for an indefinite term and that the company could not recover damages for the incarceration of Medlock since the arrest was pursuant to a valid court order.

2. Medlock preserved this issue for appeal by moving for a directed verdict at the close of plaintiff's evidence and again at the close of defendant's case.

3. The Arkansas test is similar to the federal "substantial evidence" test. In prior diversity cases this court has held that "where state and federal tests for sufficiency of the evidence are similar and neither party has raised the issue, we would look to state law as controlling." *Gisriel v. Uniroyal, Inc.,* 517 F.2d 699, 701 n.6 (8th Cir. 1975). *Accord, Hanson v. Ford Motor Co.,* 278 F.2d 586 (8th Cir. 1960). *See Howell v. H.H. Drake Trucking Co.,* 403 F.2d 651 (8th Cir. 1968).

whether there was any substantial evidence to support the verdict * * *." *McMillan v. Meuser Material & Equip. Co.,* 541 S.W.2d 911, 914 (Ark.1976). All doubts must be resolved and all inferences drawn in favor of the appellee. *Industrial Park Businessmen's Club, Inc. v. Buck,* 252 Ark. 513, 479 S.W.2d 842 (1972).

*I. Right to Possession*

Under Arkansas law, replevin is an action for the recovery of specific personal property. Ark.Stat.Ann. § 34–2101 (1962). In order to maintain an action in replevin plaintiff must allege and prove that he is the owner of the property, or has a special ownership or interest therein, and that he is entitled to immediate possession of the property. Ark.Stat.Ann. § 34–2102 (1962); *Oldham v. Melton,* 205 Ark. 240, 168 S.W.2d 387 (1943). Replevin cannot be maintained upon an ownership interest and right to possession acquired after suit has been brought. *Witherspoon v. Choctaw Culvert & Mach. Co.,* 56 F.2d 984, 986 (8th Cir. 1932); *Lambert v. Tucker,* 83 Ark. 416, 104 S.W. 131 (1907); *McKennon v. May,* 39 Ark. 442 (1882).

■ Medlock argues first that by virtue of the assignment to the bank, Garoogian had no interest in the vehicle at the time the action was commenced. As indicated by the facts recited above, at the time Garoogian filed suit on August 16, 1977, the bank had orally demanded that he repurchase the contract, but he did not in fact repurchase the contract until November 7.

Thus at the time suit was commenced Garoogian had only a contractual obligation to repurchase the contract from the bank and the permission of the bank to attempt to recover the tractor.[4] The question is whether this meets the special ownership interest and immediate right to possession requirements of Arkansas replevin law.

We have carefully reviewed the Arkansas case law and find it to be inconclusive.[5] In a diversity case, in the absence of a controlling state decision it is the duty of a federal court to apply the rule it believes the state supreme court would follow. *Luster v. Retail Credit Co.,* 575 F.2d 609, 613 (8th Cir. 1978). Further, this court accords great weight to the conclusions of the local trial judge on questions of state law. *Bergstreser v. Mitchell,* 577 F.2d 22, 25 (8th Cir. 1978); *Luster v. Retail Credit Co., supra,* 575 F.2d at 614. By submitting the questions of ownership and right to possession to the jury the trial court in this case implicitly held that Garoogian's evidence was sufficient to meet the minimum requirements of Arkansas replevin law. Since we have discovered no Arkansas law requiring a contrary conclusion, we defer to the trial court's reasonable interpretation of state law and will not set it aside.

■ Medlock makes two alternative arguments that Garoogian failed to establish his ownership interest and right to possession. Medlock argues that a security interest was never created by the conditional sale contract because, as demonstrated by the dates on the relevant documents, Garoo-

4. Garoogian and a bank officer both testified that they interpreted the repurchase agreement to mean that an oral demand to repurchase gave the dealer the right to take possession of the vehicle.

5. We have located no Arkansas law fully defining a special ownership interest. The Arkansas special ownership cases generally involve suits by executors or administrators, or joint owners of property. *Oldham v. Melton, supra; Whelan v. Edwards,* 31 Ark. 723 (1877); *Lemon's Heirs v. Rector,* 15 Ark. 436 (1855). *See generally* Cobbey on Replevin § 101 (2d ed. 1900) ("A special property interest * * * is sufficient to support replevin * * *. A special property in a thing is that which gives a qualified or

limited right thereto."); 77 C.J.S. *Replevin* § 43 ("A general or special interest or ownership in the plaintiff as far as requisite to confer a right of immediate possession against the defendant is essential to his action, but absolute ownership is not necessary. The fact that a third person may have some interest in the property will not preclude replevin by one having the right of possession.")

In a different context the Arkansas Supreme Court has recognized that a dealer-assignor of a conditional sales contract retains some interest in the collateral by virtue of his obligations under a repurchase agreement. *Norton v. National Bank of Commerce,* 240 Ark. 143, 398 S.W.2d 538 (1966).

gian sold the tractor before he purchased it from Allen. He cites no legal support for this argument. Assuming the transactions were otherwise valid, the discrepancy in dates alone should not defeat the intentions and expectations of the parties to the transactions.

■ Medlock also contends that any interest created in Garoogian was subject to the terms of the preexisting lease agreement between the corporation and Allen. The trial judge declared the lease invalid because of an indefinite term and so instructed the jury. Medlock has cited no Arkansas law to indicate that the ruling of the court was in error. Here again we defer to the local judge's interpretation of state law.

We have carefully considered the record before us. Viewing, as we must, the record in the light most favorable to Garoogian, there is ample evidence to support the jury verdict awarding possession of the vehicle to Garoogian.

## II. Damages

The jury was instructed that, should it find in favor of Garoogian, it should compensate Garoogian for the following elements of damage: the fair market rental value of the tractor for the period of time in which defendants were in possession of the tractor (45 days), and the amount of damage to the tractor caused by defendants.[6] The jury was further instructed that, should it find such damage was willfully and knowingly caused to the truck with knowledge that a complaint in replevin had been filed, the plaintiff would be entitled to double the amount of damage so caused.[7] Medlock contends that the damage award of $15,200 was in error because Garoogian introduced no evidence as to the fair rental value of the tractor, no evidence of willful damage to the vehicle, and inadequate evidence as to the condition of the vehicle when it was first taken by Medlock.

Garoogian testified that when he reacquired possession of the tractor in September 1977 the tires and wheels had been stripped, and the tractor had not been serviced. He spent $3,200 or $3,300 to put the tractor back into the condition it was in when it left his yard. When pressed upon cross-examination as to whether he knew the condition of the tractor when the Scows turned it over to Medlock in August, Garoogian admitted that he had not seen the vehicle since March 1977. Garoogian testified, however, that the vehicle could not have made it from California to Arkansas in the condition it was in when he regained possession.

Garoogian offered no testimony as to the rental value of the truck. Medlock, in presenting his defense, testified that a tractor with trailer would gross between $6,000 and $10,000 a month and that the rental value of the tractor alone was $2,000 a month.

Under Arkansas law, appellate review of a jury damage award is very limited. However,

[a] verdict will be set aside by an appellate court as excessive where there is no evidence on which the amount allowed could properly have been awarded; where the verdict must of necessity be for a smaller sum than that awarded; where the testimony most favorable to the successful party will not sustain the inference of fact on which the damages are estimated; where the amount awarded is so excessive as to lead to the conclusion that the verdict was the result of passion, prejudice * * * or of some error or mistake of principle, or to warrant conclusion that the jury were not governed by the evidence.

*Arkansas Amusement Corp. v. Ward,* 204 Ark. 130, 161 S.W.2d 178, 183 (1942), *quot-*

---

6. The instruction is in compliance with Arkansas case law on damages recoverable in a replevin action for wrongful detention of property. *Glidewell v. Polk,* 206 Ark. 890, 178 S.W.2d 59, 61 (1944); *Cullin-McCurdy Constr. Co. v. Vulcan Iron Works,* 93 Ark. 342, 124 S.W.

1023, 1025 (Ark.1910); *Dunnahoe v. Williams,* 24 Ark. 264, 267 (1866).

7. The instruction is authorized by Ark.Stat. Ann. § 34–2124 (Supp.1977).

ing from *Missouri Pacific Transp. Co. v. Simon,* 199 Ark. 289, 135 S.W.2d 336, 341 (1939). *See Shook v. Kellar,* 241 Ark. 616, 408 S.W.2d 880 (1966); *Busby v. Willform,* 241 Ark. 19, 406 S.W.2d 131 (1966).

■ Viewing the testimony most favorably to the verdict, we nevertheless cannot find that this evidence supports an award of $15,200. The only proper elements of damage are fair rental value and damage to the vehicle. Based on Medlock's testimony as to rental value, there is sufficient evidence to support an award of $3,000 ($2,000 a month for 45 days). Based on Garoogian's testimony of what it cost him to repair the tractor, there is sufficient evidence that the vehicle was damaged in the amount of $3,300. Resolving all doubts in favor of the verdict, there was adequate evidence from which the jury could infer that this damage was caused by Medlock and that the damage was willfully inflicted with knowledge of the pending replevin action. Thus, we find that the evidence supports a maximum total damage award of $9,600—$3,000 fair rental value plus $6,600, double the actual damage to the vehicle. There is simply no evidence to support an award in excess of this amount. Under these circumstances the jury verdict may properly be set aside as excessive. *Shook v. Kellar, supra; Busby v. Willform, supra; Arkansas Amusement Corp. v. Ward, supra.*

■ Medlock raises a second issue related to damages. Throughout the course of this litigation Medlock has maintained that he as an individual claims no interest in the vehicle and that the possession of the vehicle was at all times in J. Medlock Produce, Inc. On appeal Medlock claims that the instructions erroneously confused J. E. Medlock with the corporation and that there is no substantial evidence to support a damage award against him individually.

The trial court adequately instructed the jury that should it find in favor of Garoogian, it was to determine whether Medlock individually or J. Medlock Produce, Inc. or both were liable for the wrongful detention and damage to the vehicle. The form of verdict clearly separated Medlock individu-

ally from the corporation and required the jury to assess damages against each separately. Viewing the evidence in the light most favorable to the verdict, we cannot say that the evidence was inadequate to support the jury assessment of damages against Medlock individually.

### III. Prejudgment Seizure Procedures.

■ Apart from his claim that the evidence was insufficient to support the verdict, Medlock also alleges numerous errors in the prejudgment procedures by which Garoogian obtained temporary possession of the tractor pending final determination on the merits. The only claim of any possible substance is that the notice he received prior to the order of seizure was inadequate and in violation of the requirements of due process. As a remedy for the alleged violations Medlock seeks dismissal of the action or remand with instructions that the proper procedures be followed. We do not reach the merits of the constitutional claim. We simply note that the relief Medlock has requested is inappropriate in view of the fact that the merits of the possession issue have now been resolved adversely to Medlock. *See Thorp Credit, Inc. v. Barr,* 200 N.W.2d 535 (Iowa 1972). We do not here decide that a defendant has no remedy for prejudgment seizure violations after there has been a final adverse determination on the merits. Rather, we hold that the relief Medlock has requested is unavailable to him under these circumstances.

We have carefully considered Medlock's other contentions and find them to be without merit. We affirm the judgment in favor of Garoogian upon condition that, within thirty days of the filing of this opinion, he file an appropriate remittitur for all damages in excess of $9,600. In addition, it is directed that the interest at the rate of ten percent awarded by the district court from December 1, 1977, shall be based on an award of $9,600 only. Costs below are awarded against defendant-appellant, J. E. Medlock. The order of the district court dismissing the complaint of the intervenor, J. Medlock Produce, Inc., against plaintiff is

affirmed. The parties will each bear their respective costs on this appeal.

Should remittitur not be filed within the time fixed, the judgment is reversed and the case remanded for a new trial upon all issues.